IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| SELECT SPECIALTY HOSPITAL-MEMPHIS, INC., | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:19-cv-2654-JPM-tmp |
| v. | ) ) | |
| THE TRUSTEES OF THE LANGSTON COMPANIES, INC., BENEFITS PROGRAM; THE LANGSTON COMPANIES, INC.; ASSOCIATED MEDICAL CONSULTING SERVICES, LLC; and HEALTHSMART BENEFIT SOLUTIONS, INC., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER GRANTING IN PART AND DENYING IN PART ASSOCIATED MEDICAL CONSULTING SERVICES'S MOTION TO DISMISS,
GRANTING IN PART AND DENYING IN PART THE LANGSTON DEFENDANTS' MOTION TO DISMISS, AND
GRANTING IN PART AND DENYING IN PART DEFENDANT HEALTHSMART BENEFIT SOLUTIONS, INC.'S MOTION TO DISMISS**

This Employee Retirement Income Security Act ("ERISA") denial of benefits case is before the Court on several Rule 12(b)(6) Motions to Dismiss filed by Defendants. (See ECF Nos. 68, 88, 89.) Defendant HealthSmart Benefit Solutions, Inc. (hereinafter "HealthSmart") filed its Motion to Dismiss on March 9, 2020 and moves the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's First Amended Complaint on two grounds. (ECF No. 68.) First, HealthSmart asserts that Plaintiff Select Specialty Hospital-Memphis, Inc. (hereinafter "Select Specialty") has not adequately alleged that HealthSmart is an ERISA

fiduciary.  (See generally ECF No. 68-1.)  Second, HealthSmart asserts that Plaintiff's state law claims are preempted by ERISA.  (See generally id.)

The Langston Defendants[1] and Associated Medical Consulting Services, LLC (hereinafter "AMCS") filed separate Motions to Dismiss on March 9, 2020.  (ECF Nos. 88, 89.)  The Langston Defendants and AMCS move the Court to dismiss the First Amended Complaint on three grounds.  (See ECF Nos. 88, 89.)  First, the Langston Defendants and AMCS assert that Plaintiff cannot simultaneously maintain its breach-of-fiduciary-duty and wrongful-denial-of-benefits claims against the Defendants.  (See generally ECF Nos. 88-1, 89-1.)  Second, they assert that Plaintiff has failed to plead exhaustion of administrative remedies.  (See generally ECF Nos. 88-1, 89-1.)  Third, they assert that ERISA preempts Plaintiff's state law claims.  (See generally ECF Nos. 88-1, 89-1.)

On March 13, 2020, HealthSmart filed its Reply, raising for the first time the arguments raised by the other Defendants' motions.  (ECF No. 93.)  HealthSmart asserts that Plaintiff cannot assert both a wrongful-denial-of-benefits claim simultaneous with its ERISA breach-of-fiduciary claim, and that Plaintiff failed to plead exhaustion of administrative remedies.  (See generally ECF No. 93.)

Plaintiff filed its Response to HealthSmart's Motion to Dismiss on March 2, 2020.  (ECF No. 84.)  Plaintiff asserts that it has adequately alleged that HealthSmart is an ERISA fiduciary, that ERISA does not preempt its state law claims or, alternatively, these state law claims fall under ERISA's saving clause.  (See generally ECF No. 84.)  Plaintiff filed its Consolidated Response to the Langston Defendants' and AMCS's Motions on April 6, 2020.  (ECF No. 98.)  Plaintiff asserts that it can pursue both its breach-of-fiduciary-duty and wrongful-denial-of-

---

[1] The Court refers to the Trustees of the Langston Companies, Inc. Benefit Program and the Langston Companies collectively as the Langston Defendants.

benefits claims against all Defendants, that ERISA does not preempt its state law claims, and that failure to exhaust is an affirmative defense that is not appropriately raised by way of a Rule 12 motion.  (See generally id.)

The Langston Defendants and AMCS filed their Replies on April 20, 2020, reasserting the same arguments in their respective Motions.  (ECF Nos. 103, 104.)

For the reasons set forth below, HealthSmart's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**, the Langston Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**, and AMCS's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.**

## I.      BACKGROUND

### A.      Factual Background

This action arises out of Defendants' alleged nonpayment of medical expenses incurred by Plaintiff as a result of treatment rendered to a patient ("the Patient") covered by an ERISA benefits plan.  (Amended Complaint, ECF No. 48 ¶¶ 1–2.)  Select Specialty is a "long term acute care hospital" with its principal place of business in Memphis, Tennessee.  (Id. ¶¶ 1, 5.)  It serves primarily critically ill patients "who need longer term care than is typically provided in an acute care hospital."  (Id. ¶ 16.)

Plaintiff alleges that it admitted the Patient sometime between 2016 and 2017.  (Id. ¶ 19; see also *Sealed Exh. A, ECF No. 48-1.)  At the time of his admission, the Patient "assigned his insurance benefits to Select Specialty."  (ECF No. 48 ¶ 20.)  The Patient, "irrevocably assign[ed] and transferre[ed] to [Select Specialty] such insurance benefits and/or benefits plans, including the rights to benefits for treatment provided by [Select Specialty]."  (Id.) The assignment

3

"authorize[d] [Select Specialty] and/or its agents and attorneys to file any and all claims and appeals available through the highest appeal level offered by the payor."  (Id.)

Select Specialty asserts that the Langston Defendants[2] were fiduciaries of the Benefits Plan covering the Patient, and that they "exercised discretionary authority, control, or responsibility" over the management of the Plan.  (Id. ¶ 22.)  Plaintiff also alleges that the Langston Defendants entered into an "Administrative Services Agreement" with HealthSmart[3] to administer the Plan.  (Id. ¶ 23.)  Plaintiff alleges that under the Agreement HealthSmart, in its role as "Plan Administrator," has "final authority with respect to all claims determinations and operations of the Plan, as well as responsibility to ensure compliance with all applicable laws, including, but not limited to ERISA."[4]  (Id.)  Plaintiff alleges that the Plan delegated certain functions to HealthSmart including, but not limited to, "claims processing, adjudication, approval, denial, and payment."  (Id. ¶ 24.)  Plaintiff also refers specifically to its counsel's correspondence with HealthSmart, in which HealthSmart allegedly "identified itself as the third-party claims administrator for the Plan."  (Id. ¶ 25.)

Under the Agreement, HealthSmart would "adjudicate[] claims on behalf of the Plan Administrator in accordance with the Documents."  (Id. ¶ 26.)  The Agreement authorized HealthSmart to "negotiate fees with providers," "obtain professional review, [conduct] independent medical evaluations," and perform other discretionary services on behalf of the Plan.  (Id. ¶¶ 26–27.)  The Agreement allegedly authorized HealthSmart to "exercise[] its

---

[2] The Amended Complaint names the Trustees of the Langston Companies, Inc. and the Langston Companies, Inc. as the Langston entities.  (See ECF No. 48 at PageID 231; ¶¶ 6–7 ("Defendant Plan is an employer-sponsored health plan governed by ERISA and Tennessee law that was established and/or maintained by Langston for the purpose of providing its participants or their beneficiaries with medical, surgical, or hospital care or benefits . . . .").)
[3] The original agreement was allegedly between Langston and Pittman & Associates, Inc.  (Id. ¶ 23.)  However, the contract was allegedly assigned to HealthSmart on or about October 2013.  (Id.)
[4] The Amended Complaint cites to the Agreement but has not provided it as an attachment to the Amended Complaint.

authority . . . to engage AMCS to review, audit, and/or make benefit determinations with respect to the claims relating to the Patient."  (Id. ¶ 27.)

Plaintiff alleges that AMCS also was a Plan fiduciary, and that the Plan "delegated to [AMCS] functions and responsibilities of the Plan administrator for adjudication and payment, including but not limited to claims processing, adjudication, approval, denial, and payment."  (Id. ¶ 24.)  Plaintiff alleges that AMCS "is a separate care-management vendor directly engaged by the Plan to provide care management services," and that AMCS "acts as an agent to the Plan."  (Id. ¶ 28.)  Plaintiff further alleges that "the Plan [] instructed HealthSmart to rely on the written instruction and representation of AMCS as it relates to the handling and adjudication of claims."  (Id.)

Plaintiff corresponded with both HealthSmart and AMCS regarding the Patient's coverage at the time the Patient was admitted to the hospital and before Plaintiff treated the Patient.  (See id. ¶¶ 28–32.)  Plaintiff alleges that HealthSmart informed Select Specialty that it was "out of network" and that it would pay 150% of Medicare rates.  (Id. ¶ 31.)  HealthSmart allegedly failed to disclose to Select Specialty "any lifetime, yearly, or diagnosis benefit caps," and "[HealthSmart] stated the days limit for inpatient hospital stays would be based on medical necessity and precertification."  (Id.)  Plaintiff, relying on these statements, provided medically necessary treatment to the Patient and "care[d] for wounds that existed at the time of the Patient's admission."  (Id. ¶ 32.)

After treating the Patient, Select Specialty alleges that it "properly and timely submitted claims to Defendants, together with all necessary supporting documents and information."  (Id. ¶ 33.)  The claim totaled $1,079,226.99.  (Id.)  Defendants paid only $212,048.95 on the claim.  (Id. ¶ 35.)  Defendants allegedly justified their nonpayment because the Patient's wounds were

5

caused by "never events" or by a "hospital-acquired condition" and were therefore not covered

by the Plan.  (Id. ¶¶ 36–37.)  Plaintiff asserts that the Center for Medicare and Medicaid Services

("CMS") ordinarily reimburses Select Specialty as a long-term care hospital for these events or

conditions, and that "never events" are not a distinction made by CMS.  (Id. ¶¶ 37–39.)

Plaintiff asserts that these determinations contradicted representations made by

HealthSmart and ran afoul of Medicare reimbursement rates for long-term care hospitals.  (Id.)

Plaintiff contends that Defendants paid the rates applicable to other types of "Extended Skilled

Nursing or Rehabilitation Facilit[ies]" rather than Medicare reimbursement rates applicable to a

long-term care hospital.  (Id. ¶¶ 43–44.)

Plaintiff alleges that it "appealed the Defendants' denial of all or part of the

reimbursement sought, which appeals have been denied."  (Id. ¶ 46.)  Alternatively, Select

Specialty argues that if it failed to exhaust its Plan-provided remedies, "Defendants' refusal to

pay the claims at issue or to otherwise reverse its position for over two years" renders any appeal

"futile."  (Id.)

### B.     Select Specialty's Claims

Plaintiff asserts claims under the Tennessee and federal declaratory judgment acts,

ERISA, and several causes of action under Tennessee law.  (See id. at PageID 239–46.)  Plaintiff

seeks a declaratory judgment establishing "Defendants' reimbursement obligations to Select

Specialty for its long-term care hospital services to the Patient under the Plan and/or based on the

representations made to Select Specialty by Defendants."  (Id. ¶¶ 48–49.)  Plaintiff also asserts

two separate ERISA claims against all Defendants: (1) a "Claim to Enforce and Obtain Benefits

under ERISA"; and (2) "Breach of Fiduciary Duties under ERISA."  (Id. at PageID 240–42,

¶¶ 50–61.)  Plaintiff asserts four state law claims: (1) violation of the Tennessee Prompt Pay Act,

Tenn. Code Ann. § 56-7-109; (2) Bad Faith Refusal to Pay in violation of Tenn. Code Ann. § 56-7-105; (3) Promissory Estoppel; and (4) Negligent Misrepresentation.  (Id. at PageID 242–46, ¶¶ 62–96.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)).  A motion to dismiss only tests whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases which would waste judicial resources and result in unnecessary discovery.  Brown v. City of Memphis, 440 F.Supp.2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  If a court decides that the claim is not plausible, the case may be dismissed at the pleading stage.  Iqbal, 556 U.S. at 679.  "[A] formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555. The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555).  A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  A complaint

need not contain detailed factual allegations.  Twombly, 550 U.S. at 570.  A plaintiff without

facts who is "armed with nothing more than conclusions," however, cannot "unlock the doors of

discovery."  Iqbal, 556 U.S. at 678-79; Green v. Mut. of Omaha Ins. Co., No. 10-2487, 2011 WL

112735, at *3 (W.D. Tenn. Jan. 13, 2011), aff'd 481 F. App'x 252 (6th Cir. 2012).

Assessing the facial sufficiency of a complaint ordinarily must be undertaken without

resort to matters outside the pleadings.  Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d 1102, 1104

(6th Cir. 2010).  "[D]ocuments attached to the pleadings become part of the pleadings and may

be considered on a motion to dismiss."  Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,

508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); see also Koubriti v. Convertino,

593 F.3d 459, 463 n.1 (6th Cir. 2010).  Even if a document is not attached to a complaint or

answer, "when a document is referred to in the pleadings and is integral to the claims, it may be

considered without converting a motion to dismiss into one for summary judgment."

Commercial Money Ctr., 508 F.3d at 335–36.  When evaluating a motion to dismiss, the Court

may also take judicial notice of pertinent matters of public record, including bankruptcy filings.

Signature Combs, Inc. v. United States, 253 F. Supp. 2d 1028, 1040 n.5 (W.D. Tenn. 2003).

## III.    ANALYSIS

### A.    ERISA Fiduciary Status

ERISA allows beneficiaries to sue Plan fiduciaries for breaching their fiduciary duties in

connection with benefits decisions.  See 29 U.S.C. § 1132(a)(2).  To establish a claim for breach

of fiduciary duty, the plaintiff must prove that the plan administrator is an ERISA fiduciary.

McLemore v. Regions Bank, 682 F.3d 414, 422 (6th Cir. 2012); see also Deschamps v.

Bridgestone Ams., Inc. Salaried Emps. Ret. Plan, 169 F. Supp. 3d 735, 747 (M.D. Tenn. 2015).

An entity is an ERISA fiduciary if:

> (i) [it] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) [it] renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) [it] has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A); see also Deschamps, 169 F. Supp. 3d at 747. "[F]iduciary status [extends] to every person who exercises 'mere possession, or custody' over the plans' assets." Briscoe v. Fine, 444 F.3d 478, 494 (6th Cir. 2006) (quoting Chao v. Day, 436 F.3d 234, 237 (D.C. Cir. 2006)) (internal quotation marks omitted). ERISA does not "require the entity to exercise *complete* discretionary control to be considered a fiduciary; instead, an employer or plan administrator is a fiduciary if [it] exercises *any* discretionary control or authority over the plan." Deschamps, 169 F. Supp. 3d at 747 (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 11 (1989)) (emphasis in original); see also Shy v. Navistar Int'l Corp., 701 F.3d 523, 529 (6th Cir. 2012); Anderson v. Great W. Life Assurance Co., 942 F.2d 392, 395 (6th Cir. 1991)). Fiduciary status applies on a decision by decision basis, and a defendant can be an ERISA fiduciary "with respect to some decisions, but not others." Anderson, 942 F.2d at 395; see also Briscoe, 444 F.3d at 486 ("[S]everal courts have focused on the phrase 'to the extent' in holding that '[f]iduciary status . . . is not an all or nothing concept,' and that they must therefore 'ask whether a person is a fiduciary with respect to the particular activity in question.'" (quoting Moench v. Robertson, 62 F.3d 553, 561 (3d Cir. 1995))).

"When [a third-party] company administers claims for an employee welfare benefits plan and has authority to grant or deny the claims, the company is an ERISA 'fiduciary' under 29 U.S.C. § 1002(21)(A)(iii)." Libbey–Owens–Ford Co. v. Blue Cross & Blue Shield Mutual of Ohio (BCBSM), 982 F.2d 1031, 1035 (6th Cir. 1993). A plaintiff adequately pleads the

fiduciary status of a third-party administrator if it alleges that the "[third-party administrator] had discretion to grant or deny [a plaintiff's] claims . . . ." Hill v. Blue Cross and Blue Shield of Mich., 409 F.3d 710, 717 (6th Cir. 2005).  A third-party administrator qualifies as an ERISA fiduciary if the plan administration agreement includes "permissive language" granting significant discretionary authority to the administrator, if the third-party administrator holds themselves out as a fiduciary, and if the third-party administrator has the ability to amend the plan to comply with federal law.  See Six Clinics Holding Corp., II v. Cafcomp Sys., Inc., 119 F.3d 393, 401–02 (6th Cir. 1997).

If a third-party administrator only applies plan documents to process claims within a claims-processing framework set by other entities, without having control over plan administration to grant and deny claims, the entity is not an ERISA fiduciary.  See Briscoe, 444 F.3d at 489–90; see also Dana Ltd. v. Aon Consulting, Inc., 984 F. Supp. 2d 755, 763 (N.D. Ohio 2013) ("To state a plausible claim under this theory, Dana must allege Aon 'performed more than a mere ministerial or contractually compelled function' with respect to the Plan." (quoting Pipefitters Local 636 v. Blue Cross & Blue Shield of Mich., 213 F. App'x 473, 477 (6th Cir. 2007)).

       *1.*     *Select Specialty has adequately alleged that HealthSmart is an ERISA fiduciary.*

Plaintiff has sufficiently alleged that HealthSmart is an ERISA fiduciary.  Plaintiff alleges that HealthSmart entered into an Administrative Services Agreement with the Langston Defendants to operate as "Plan Administrator," giving it "final authority with respect to all claims determinations and operations of the Plan, as well as responsibility to ensure compliance with all applicable laws, including, but not limited to ERISA."  See Hill, 409 F.3d at 716–17 (discussing the third-party administrator's authority to grant and deny claims); see also Six

Clinics, 119 F.3d at 402 (authority to ensure compliance with federal law).  (Am. Compl., ECF No. 48 ¶ 23.)  The Agreement also provides that in its role as "Third Party Administrator" of the Plan, HealthSmart would provide "claims administration and certain other services on behalf of the Plan Administrator," and would "adjudicate[] claims on behalf of the Plan Administrator in accordance with the Documents."  (Id. ¶ 26.)  The Agreement authorizes HealthSmart to "negotiate fees with providers when a covered person incurs medial expenses that are not eligible for discount under the Plan's preferred provider networks or under any other financial agreement."  (Id.)  By its terms, the Agreement delegated significant "discretionary authority or discretionary control respecting management of such plan" to HealthSmart.  29 U.S.C. § 1002(21)(A).

Plaintiff has also alleged that HealthSmart acted as a fiduciary with respect to the services it did (or, rather, did not) provide to Select Specialty.  See Briscoe, 444 F.3d at 486.  Plaintiff alleges that it had direct contact with HealthSmart both before and after it treated the Patient to determine payment and coverage information, and that HealthSmart "identified itself as third-party claims administrator for the Plan . . . ."  (See Am. Compl., ECF No. 48 ¶¶ 25, 30–31, 33–34.)  Select Specialty contacted HealthSmart to "obtain verification of coverage and policy benefits under the Plan and to query whether Select Specialty's treatment would be authorized."  (Id. ¶ 31.)  Plaintiff further alleges that "HealthSmart informed Select Specialty that it was out-of-network but that benefits would be paid at 150% of what Medicare would allow," and it did not disclose any "lifetime, yearly, or diagnosis benefit caps."  (Id.)  Inpatient stay limits would "be based on medical necessity and precertification."  (Id.)  Plaintiff submitted its claims for payment to HealthSmart after treating the Patient to HealthSmart, who ultimately denied most of Plaintiff's claim.  (Id. ¶¶ 33–34.)  These allegations, along with the Plan's delegation to

HealthSmart of significant discretionary authority over coverage determinations and payment authorizations, support the finding that HealthSmart is a Plan fiduciary.

Contrary to HealthSmart's assertion, it is not HealthSmart's title *alone* that establishes its fiduciary status.  (Underline See ECF No. 68-1 at PageID 548.)  HealthSmart's discretionary authority over Plan benefits, coverage determinations, and services, per the Administrative Services Agreement, and HealthSmart's representations to Select Specialty regarding coverage of the Patient, as well as its denial of payment, all support the finding that HealthSmart is an ERISA fiduciary.

The Court finds unpersuasive HealthSmart's assertion that Plaintiff cannot allege that HealthSmart had full authority over Plan management decisions because Plaintiff admits in the Amended Complaint that AMCS had decision-making authority over Plan benefits determinations, and because Plaintiff alleges that the Plan instructed HealthSmart to accept AMCS's direction.  (See Reply, ECF No. 93 at PageID 6438.)  This argument ignores the principle of pleading in the alternative under Federal Rule of Civil Procedure 8(d).  Rule 8(d) allows a plaintiff to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."  Fed. R. Civ. P. 8(d)(2). A plaintiff may "state as many separate claims or defenses it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

HealthSmart cites to the following portion of the Amended Complaint: "In the alternative, . . . HealthSmart represented to Select Specialty" that "AMCS acts as an agent to the Plan, and the Plan has instructed HealthSmart to rely on the written instruction and representation of AMCS as it relates to the handling and adjudication of claims."  (ECF No. 48 ¶ 28.)  If true, this would lead to a finding inconsistent with the conclusion that HealthSmart was a Plan fiduciary.  It would mean that HealthSmart could not have exercised discretionary control

over plan decisions and benefits determinations and would instead be bound to follow the directives of a third party or the Plan. This inconsistency, however, is an example of alternative pleading contemplated and permitted by Rule 8(d).

The Court will not consider the May 28, 2018 letter relied on by HealthSmart in its Motion to Dismiss.  Under Rule 10(c), a document that is attached to the pleadings as an exhibit may become part of the pleadings "for all purposes."  Fed. R. Civ. P. 10(c).  On a defendant's motion to dismiss, the Court generally "is not permitted to consider matters beyond the complaint."  Mediacom Se. LLC v. BellSouth Telecomms., Inc., 672 F.3d 396, 399 (6th Cir. 2012).  The Court may in limited circumstances consider documents which the defendant attaches to its motion "if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim."  Composite Techs., L.L.C. v. Inoplast Composites SA DE CV, 925 F. Supp. 2d 868, 873 (S.D. Ohio 2013) (quoting Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997)) (internal quotation marks omitted).  This limited exception to the rule affords some protection to defendants, as categorically ignoring such documents may allow a "'plaintiff with a legally deficient claim [to] survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.'"  Id. (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  "While documents integral to the complaint may be relied upon, even if [they are] not attached or incorporated by reference, [i]t must also be clear that there exists no material disputed issues of fact regarding the relevance of the document."  Mediacom, 672 F.3d at 400 (quoting Weiss v. Inc. Vill. of Sag Harbor, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011)); see also Faulkner v. Beer, 463 F.3d 130, 134 (6th Cir. 2006). Considering the contents of a disputed document at the motion to dismiss stage would "unduly raise[] the pleading standard beyond the heightened level of Iqbal and Twombly, forcing the

13

plaintiff's well-pleaded facts to be not only plausible, but persuasive."  <u>Mediacom</u>, 672 F.3d at 400.

Although Plaintiff references the letter in the Amended Complaint for the proposition that HealthSmart identified itself as third-party administrator of the Plan (<u>see</u> ECF No. 48 at PageID 236), the letter is not central to Plaintiff's claim that HealthSmart is an ERISA fiduciary, and the Parties dispute its significance.  <u>Cf.</u> <u>Inoplast</u>, 925 F. Supp. 2d at 873 ("[D]ocumentation of said orders falls within the scope of what Defendant may attach and the Court may consider on this motion because those orders are incorporated by reference, *integral to Plaintiff's claim*, and *not disputed in authenticity by Plaintiff*." (emphasis added)).  Plaintiff disputes the contents of the letter, which is inconsistent with the First Amended Complaint's factual allegations.  (See ECF No. 84 at PageID 6363.)  The Court will not consider the letter, which provides HealthSmart's interpretation of its legal status and its relationship with the Plan and was wholly prepared by HealthSmart as part of its denial of Select Specialty's claim.  <u>See</u> <u>Mediacom</u>, 672 F.3d at 400. (<u>See</u> ECF No. 33-1 at PageID 113.)   The Court, therefore, will not credit this letter against Plaintiff's allegations, as doing so would result in the weighing of evidence against Plaintiff's allegations, which is inappropriate when ruling on a motion to dismiss.

> 2.    *Plaintiff has adequately alleged that Defendant AMCS is an ERISA fiduciary.*

Plaintiff has adequately alleged that Defendant AMCS is an ERISA fiduciary.  Plaintiff alleges that AMCS is a fiduciary of the Plan because the "Plan had delegated to [AMCS] functions and responsibilities of the Plan administrator for adjudication and payment, including but not limited to claims processing, adjudication, approval, denial, and payment," and that

AMCS "assumed all obligations imposed by ERISA on plan fiduciaries and/or administrators."[5] (ECF No. 48 ¶ 24.)  As with HealthSmart, Plaintiff has alleged that AMCS has control and full discretionary authority to adjudicate, deny, and approve claims for benefits on behalf of the Plan, and that its determinations are binding on beneficiaries, HealthSmart, and the Plan.

Plaintiff further alleges in the alternative that HealthSmart "exercised its authority under [the Administrative Services Agreement] to engage AMCS to review, audit, and/or make benefit determinations with respect to claims relating to the Patient."  (Id. ¶ 27.)  HealthSmart informed Select Specialty that "AMCS is a separate care-management vendor engaged directly by the Plan to provide care management services."  (Id. ¶ 28.)  Plaintiff further alleges that "AMCS acts as an agent to the Plan, and the Plan has instructed HealthSmart to rely on the written instruction and representation of AMCS as it relates to the handling and adjudication of claims."  (Id.) AMCS contacted the Plan administrators when reviewing Plaintiff's charges, and "identified [] whether and to what extent benefits should be paid to Select Specialty for the services it provided to the Patient."  (Id. ¶ 29.)

The Court finds these allegations sufficient to demonstrate that AMCS had discretionary authority over Plan benefits determinations.  It is not true that these allegations suggest that AMCS merely performed ministerial functions in determining benefits.  Cf. Briscoe, 444 F.3d at 489–90.  Having been fully delegated authority to make benefits determinations and to adjudicate disputes over claims, AMCS qualifies as an ERISA fiduciary.  See Hill, 409 F.3d at 717; see also Libbey–Owens–Ford, 982 F.2d at 1035.  Plaintiff provides detailed allegations

---

[5] Defendant AMCS contends that this assertion is a conclusory allegation and the "exact pleading technique that the U.S. Supreme Court rejected in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)."  (ECF No. 103 at PageID 6552.)  But this paragraph of the Amendment Complaint provides sufficient factual allegations beyond the mere recitation of the statutory elements of the claim to avoid dismissal under Rule 12(b)(6).  Furthermore, without access to Plan documents and without access to the contract between AMCS and the Langston Defendants, Plaintiff cannot allege more than its own belief and good faith assertion that these facts existed.

15

demonstrating that the Plan delegated authority over benefits determinations to AMCS, and that AMCS reviewed and denied benefits allegedly owed to Select Specialty.

### B.     Defendant HealthSmart's Arguments Regarding the Exclusivity of Plaintiff's ERISA Benefits Claim and HealthSmart's Exhaustion Arguments

HealthSmart raised for the first time in its Reply the argument that Plaintiff cannot recover under both §§ 1132(a)(1)(B) and 1132(a)(3).  (ECF No. 93 at PageID 6439.)  Defendant's Reply "incorporates the authorities and arguments contained in AMCS's and [the] Langston Defendants' Motion to Dismiss as to Plaintiff's failure to state an ERISA breach of fiduciary duty claim."  (ECF No. 93 at PageID 6439.)  The Court will not consider the merits of this argument.  Nor will the Court consider HealthSmart's argument that Plaintiff failed to properly allege exhaustion of its administrative remedies, which HealthSmart raised for the first time in its Reply.  (See ECF No. 93 at PageID 6439–40.)

An argument raised for the first time in a reply brief is considered waived.  Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008).  "[R]eply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."  Id. (quoting Novosteel SA v. U.S., Bethlehem Steel Corp., 284 F.3d 1261, 1274 (Fed. Cir. 2002)) (emphasis in original).  The nonmoving party generally has "no right to respond to the reply brief, at least not until oral argument."  Id. (quoting Novosteel, 284 F.3d at 1274).  Courts in the Sixth Circuit have applied this principle to find defendants to have waived arguments raised for the first time in a reply brief filed in support of a motion to dismiss.  See, e.g., Malin v. JPMorgan, 680 F. Supp. 2d 574, 577 (E.D. Tenn. Mar. 12, 2012) (finding the defendant's *res judicata* and collateral estoppel arguments waived when raised for the first time in a reply brief); In re FirstEnergy Corp. Secs. Litig., 316 F. Supp. 2d 581, 599 (N.D. Ohio 2004) (dismissing arguments raised by defendants for the first time in

their reply briefs supporting their motion to dismiss); Sims v. Piper, No. 07-14380, 2008 WL 3318746, at *4–5 (E.D. Mich. Aug. 8, 2008) (finding that the defendants waived arguments raised for the first time in a reply).

HealthSmart raises these two arguments for the first time in its Reply, as it recites the arguments asserted by Defendants in their separate Motions to Dismiss.  (See ECF No. 93 at PageID 6439–40.)  Neither of these issues were raised by Plaintiff in its Response to the Motion. (See generally ECF No. 84.)  Because these two arguments were raised for the first time in the reply, and because these arguments cannot be construed as responding to any arguments raised by Plaintiff, Defendant has waived these arguments.  See In re FirstEnergy, 316 F. Supp. 2d at 599; see also Malin, 860 F. Supp. 2d at 578 ("[A]s a matter of litigation fairness and procedure, the Court declines, at this time, to address this argument [raised for the first time in a reply brief].").

### C.      Exclusivity of ERISA Benefits Claim

Both the Langston Defendants and AMCS argue that Plaintiff cannot proceed on both its ERISA benefits claim and ERISA breach of fiduciary duty claim, and that the latter claim must be dismissed.  (See AMCS Mot. to Dismiss, ECF No. 88-1 at PageID 6397–98; see also Langston Defendants Mot. to Dismiss, ECF No. 89-1 at PageID 6411–13.)

Plaintiff pursues two separate ERISA claims in this action: a claim for denial of benefits under § 502(a)(1)(B) and a claim for breach of fiduciary duty under § 503(a)(3), based on HealthSmart's and AMCS's alleged misrepresentations regarding coverage of the Patient. Section 502(a)(1)(B) allows a "participant or beneficiary" to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Section 503(a)(3)

allows for suits against ERISA fiduciaries "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"  29 U.S.C. § 1132(a)(3).

In Rochow v. Life Insurance Co. of North America, 780 F.3d 364 (6th Cir. 2015) (en banc), the Sixth Circuit held that a plaintiff's claim for benefits under § 502(a)(1)(B) prevented the plaintiff from also recovering for defendant's "breach of fiduciary duty consisting of arbitrary and capricious denial of benefits" under § 503(a)(3).  Id. at 371.  "Allowing Rochow to recover disgorged profits under § 502(a)(3), in addition to recovery under § 502(a)(1)(B), based on the claim that the wrongful denial of benefits also constituted a breach of fiduciary duty, would—absent a showing that the § 502(a)(1)(B) remedy is inadequate—result in an impermissible duplicative recovery . . . ."  Id.  The Sixth Circuit summarized when a plaintiff can recover under both ERISA claims:

> A claimant can pursue a breach-of-fiduciary-duty claim under § 502(a)(3), irrespective of the degree of success obtained on a claim for recovery of benefits under § 502(a)(1)(B), only where the [breach-of-fiduciary-duty] claim is based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate [to make the claimant whole].

Id. at 372.  The Sixth Circuit has further clarified that "[w]here a claimant asserts an injury 'separate and distinct from the denial of benefits,' then dual ERISA claims and remedies may be appropriate."  Brown v. United of Omaha Life Ins. Co., 661 F. App'x 852, 860 (6th Cir. 2016) (quoting Rochow, 780 F.3d at 372).

Prior to Rochow, in Gore v. El Paso Energy Corp. Long Term Disability Plan, 477 F.3d 833 (6th Cir. 2007), the Sixth Circuit allowed a plaintiff to bring both a denial-of-benefits claim and breach-of-fiduciary-duty claim arising out of "two separate and distinct injuries."  See id. at

18

840.  The plaintiff's benefits claim related to the plan manager's incorrect interpretation of the term "any occupation" provided by plan documents.  Id. at 840.  The plaintiff's breach-of-fiduciary-duty claim related to misrepresentations made by a separate defendant regarding the "scope of the policy."  Id. at 841.  The Sixth Circuit did not find the two claims to be duplicative of one another:

> [A]n award of benefits to Gore under the [denial-of-benefits claim] would not have changed the alleged fact that El Paso misrepresented the policy's coverage to Gore. The award of benefits would have merely made the need for relief in the form of injunction or damages moot, but it would not have addressed the question of whether Gore was entitled to [relief for the misrepresentation][.]

Id.

The Sixth Circuit premised its holding, however, on the unavailability of relief against the plaintiff's employer for denial of benefits:

> Had Gore alleged that Liberty breached its fiduciary duty, pursuant to § 1132(a)(3), for wrongful denial of benefits, under [Wilkins v. Baptist Healthcare System Inc., 150 F.3d 609 (6th Cir. 1998),] the claim would be duplicative of his § 1132(a)(1)(B) claim. Gore cannot claim that Liberty breached its fiduciary duty pursuant to § 1132(a)(1)(B) or § 1132(a)(3), for misrepresenting the scope of the policy coverage because Gore alleges that El Paso, not Liberty, misrepresented the scope of the policy.
>
> The injury of which Gore complains is different than both of these. Instead, Gore complains that El Paso breached its fiduciary duty by leading Gore to believe that he had two years of "own occupation" benefits. *Assuming that he could not seek relief from El Paso pursuant to § 1132(a)(1)(B) or § 1132(a)(2)* (see discussion supra), Gore's only remedy against El Paso would be under § 1132(a)(3). The two claims are distinct and unrelated to each other.

Id. at 841 (emphasis added).  Gore, read in light of the Sixth Circuit's subsequent holding in Rochow, represents a case in which allowing recovery under both ERISA claims *against separate defendants* was appropriate because the "remedy afforded by Congress under § 502(a)(1)(B) [was] otherwise shown to be inadequate" as to one of the defendants.  See Rochow, 780 F.3d at 372; see also Gore, 477 F.3d at 841 (analyzing claim by "[a]ssuming that

he could not seek relief from El Paso pursuant to § 1132(a)(1)(B) or § 1132(a)(2)" based on the plaintiff's concession of duplicative remedies in the district court against his employer El Paso).

The Sixth Circuit's decision in <u>Donati v. Ford Motor Co., General Retirement Plan, Retirement Community</u>, 821 F.3d 667 (6th Cir. 2016), supports the Court's reading of <u>Gore</u>. In <u>Donati</u>, the Sixth Circuit held that a plaintiff could not seek equitable relief under an ERISA breach-of-contract claim because the plaintiff "[sought] the exact same relief in both [her breach-of-contract and denial-of-benefits claims]: the $230,361.49 that Ford originally promised Donati." <u>Id.</u> at 673. Donati alleged that Ford Motor Company, her employer, had promised to cash her out with a retirement benefits package of $230,361.49, and that the defendant misrepresented that sum and ultimately recalculated her benefits package at a much lower rate. <u>Id.</u> at 670. <u>Gore</u>'s holding did not allow her to bring both claims against the same defendant. <u>Id.</u> at 674. The Sixth Circuit reasoned that <u>Gore</u> "was [premised on] the fact that the plaintiff's breach-of-fiduciary-duty claim was against a defendant whom the plaintiff could not sue for wrongful denial of benefits." <u>Id.</u> "If a plaintiff tried to bring a wrongful-denial-of-benefits claim *and* a breach-of-fiduciary-duty claim against the *same* defendant, the outcome 'would be different.'" <u>Id.</u> (quoting <u>Gore</u>, 447 F.3d at 842) (emphasis in original). The plaintiff's claims in <u>Donati</u> "impermissibly repackage[d] her wrongful-denial-of-benefits claim," making dismissal of her secondary claim appropriate. <u>Id.</u>

The Court will apply <u>Donati</u> to dismiss Plaintiff's breach-of-fiduciary-duty claim against the Langston Defendants. Plaintiff cannot maintain a claim against the Langston Defendants because success on its wrongful-denial-of-benefits claim would provide Plaintiff adequate relief. <u>See</u> <u>Gore</u>, 477 F.3d at 841 ("Had Gore alleged that Liberty breached its fiduciary duty, pursuant to § 1132(a)(3), for wrongful denial of benefits, . . . the claim would be duplicative of his

§ 1132(a)(1)(B) claim."); see also Donati, 821 F.3d at 673–74 ("The only difference between her

two claims is the nature of the alleged wrongdoing—misrepresenting the cash-out value of her

benefits, as opposed to wrongfully denying her benefits.  Under Rochow, this distinction alone is

insufficient to allow a breach-of-fiduciary-duty claim.").  Plaintiff's claims seek to recover for

the same injury: the wrongful denial of benefits based both on HealthSmart's and AMCS's

alleged misrepresentations and their denial of Plaintiff's claim for benefits as agents of the Plan.

See Donati, 821 F.3d at 673–74; see also Blair v. Pension Comm. of Johnson & Johnson, 831 F.

Supp. 2d 1021, 1024 (W.D. Ky. 2011) (dismissing breach-of-fiduciary-duty claim because the

plaintiff was suing the entity "responsible for the denial of her benefits").

 The same goes for AMCS.  Plaintiff cannot seek to recover from AMCS on both ERISA

claims, as they both seek to recover for the same injury.  See Donati, 821 F.3d at 673–74.

Nothing alleged would bar Plaintiff from bringing a claim for benefits against AMCS.  Cf. Gore,

477 F.3d at 841.

### D. Failure to Plead Exhaustion of Administrative Remedies

 The Langston Defendants and AMCS allege that Plaintiff has not adequately pled that it

exhausted its administrative remedies.  (See ECF No. 88-1 at PageID 6399–400; see also ECF

No. 89-1 at PageID 6425–26.)  Although not directly addressed by the Sixth Circuit, "a number

of courts have held that exhaustion of administrative remedies under ERISA is an affirmative

defense."  Hood v. Ford Motor Co., No. 11–10649, 2011 WL 3651322, at *8 (E.D. Mich. Aug.

19, 2011) (quoting Zappley v. The Stride Rite Corp., No. 2:09-CV-198, 2010 WL 234713, at *4

(W.D. Mich. Jan. 13, 2020)) (internal quotation marks omitted).  Courts have "increasingly

recognized a summary judgment motion is the proper vehicle for considering a defendant's claim

that a plaintiff has failed to exhaust administrative remedies before filing a civil action."  Gunn v.

Bluecross Blueshield of Tenn., Inc., No. 1:11–CV–183, 2012 WL 1711555, at *4 (E.D. Tenn. May 15, 2012); see also Beamon v. Assurant Emp. Benefits, 917 F. Supp. 2d 662, 666 (W.D. Mich. 2013) ("Because exhaustion is an affirmative defense, a Rule 56 'summary judgment motion is the proper vehicle for considering a defendant's claim that a plaintiff failed to exhaust administrative remedies before filing a civil action.'" (quoting Gunn, 2012 WL 1711555, at *4)). "[A] Rule 12(b)(6) motion is generally not the proper vehicle for asserting lack of exhaustion." Hood, 2011 WL 3651322, at *8 (quoting Zappley, 2010 WL 234713, at *4) (internal quotation marks omitted).

The Court will not dismiss Plaintiff's claims based on its failure to adequately plead administrative exhaustion.  The Court will not do so because exhaustion is an affirmative defense and because Defendants have raised the issue via their Rule 12 Motions.  Because it is not evident that the "defense appears on the face of the complaint," the Court finds that this case does not qualify as an exception to the general rule against dismissal of an action based on an affirmative defense.  Beamon, 917 F. Supp. 2d at 666 (quoting In re Lehman Bros. Sec. & Erisa Litig., 799 F. Supp. 258, 317 (S.D.N.Y. 2011)).

### E.    ERISA Preemption of Plaintiff's State Law Claims

#### 1.    ERISA Preemption Framework

"ERISA was enacted to replace a patchwork scheme of state regulation of employee benefit plans with a uniform set of federal regulations."  Productive MD, LLC v. Aetna Health, LLC, 969 F. Supp. 2d 901, 934 (M.D. Tenn. 2013) (citing Tolton v. Am. Biodyne, Inc., 48 F.3d 937, 941 (6th Cir. 1995)).  The "comprehensive civil enforcement scheme [of ERISA] carefully sets forth who can sue, when they can sue, and what remedies they can get."  K.B. by and through Qassis v. Methodist Healthcare - Memphis Hosps., 929 F.3d 795, 799 (6th Cir. 2019)

(quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 53–54 (1987)) (internal quotation marks

omitted).  ERISA includes "expansive preemption provisions that are intended to [e]nsure that

employee benefit plan regulation is exclusively a federal concern." Productive MD, 969 F.

Supp. 2d at 934 (citing Aetna Health, Inc. v. Davila, 542 U.S. 200, 207–08 (2004); Cromwell v.

Equicor-Equitable HCA Corp., 944 F.2d 1272, 1276 (6th Cir. 1991)).

        a.     *Express ERISA Preemption*

     "There are two forms of ERISA preemption: express preemption (which applies broadly)

and complete preemption (which applies narrowly)." Methodist Healthcare, 929 F.3d at 800.

ERISA's preemption clause covers "any and all State laws insofar as they may now or hereafter

relate to any employee benefit plan." Gobeille v. Liberty Mut. Ins. Co., 136 S. Ct. 936, 943

(2016) (quoting 29 U.S.C. § 1144(a) [ERISA § 514]) (internal quotation marks omitted).  ERISA

expressly preempts state laws which mention ERISA in the law's text, state laws whose

operation requires the existence of ERISA plans, and state laws that have "an impermissible

connection with ERISA plans[.]" Methodist Healthcare, 929 F.3d at 800 (quoting Gobeille, 136

S. Ct. at 943) (internal quotation marks omitted).  Section 514 "displace[s] all state laws that fall

within its sphere, even including state laws that are consistent with ERISA's substantive

requirements." Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 829 (1988)

(citation omitted); see also Self-Insurance Inst. of Am., Inc. v. Snyder, 827 F.3d 549, 555 (6th

Cir. 2016).

     "The phrase 'relate to' is given broad meaning such that a state law cause of action is

preempted if it has connection with or reference to that plan." Cromwell, 944 F.2d at 1275–76

(quoting Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 730, 732–33 (1985)) (internal

quotation marks omitted).  If a state law claim is "in essence" a claim for recovery of ERISA

plan benefits, the claim is preempted under § 504.  See Cromwell, 944 F.2d at 1276; see also

McCarthy v. Ameritech Pub., Inc., 763 F.3d 439, 481 (6th Cir. 2014).  Courts look to "the kind

of relief that plaintiffs seek, and its relation to the [ERISA benefits] plan" to determine whether a

claim "relates to" an ERISA benefits plan.  Briscoe, 444 F.3d at 497 (quoting Ramsey v. Formica

Corp., 398 F.3d 421, 424 (6th Cir. 2005)) (internal quotation marks omitted).

A state law has an "impermissible connection with ERISA plans" when it "governs . . .  a

central matter of plan administration or interferes with nationally uniform plan administration."

Self-Insurance Inst. of Am., Inc. v. Snyder, 827 F.3d 549, 555 (6th Cir. 2016) (quoting Gobeille,

136 S. Ct. at 943) (internal quotation marks omitted).  Three general categories of state law

claims have an "impermissible connection with ERISA plans":

> [S]tate laws that (1) mandate employee benefit structures or their administration;
> (2) provide alternative enforcement mechanisms; or (3) bind employers or plan
> administrators to particular choices or preclude uniform administrative practice,
> thereby functioning as a regulation of an ERISA plan itself.

Id. (quoting Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692, 698

(6th Cir. 2005) ("PONI")).  The Sixth Circuit has also recognized a fourth category of ERISA-

preempted claims, "those seeking 'remedies for misconduct growing out of the administration

of' an ERISA plan."  See Steele v. United Parcel Serv., Inc., 499 F. Supp. 2d 1035, 1040 (E.D.

Tenn. 2007) (quoting Briscoe, 444 F.3d at 497).  A state law also "may have an impermissible

connection with ERISA plans if 'acute, albeit indirect, economic effects' of the state law 'force

an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice

of insurers.'"  Snyder, 827 F.3d at 555–56 (6th Cir. 2016) (quoting Gobeille, 136 S. Ct. at 943).

Most state law claims that provide for the "payment to beneficiaries or their assignees

under ERISA-governed employee benefit plans are generally preempted[.]"  Productive MD, 969

F. Supp. 2d at 935.  The Sixth Circuit has "emphasized the broad scope of ERISA preemption,

noting that 'virtually all state law claims relating to an employee benefit plan are preempted by ERISA.'" Tinsley v. Gen. Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000) (quoting Cromwell, 944 F.2d at 1276).  Only state law claims having a "merely tenuous, remote or peripheral" effect on ERISA employee benefit plans avoid preemption.  Cromwell, 944 F.2d at 1276.

        *b.*     *ERISA Complete Preemption*

A state law claim is "completely preempted" by ERISA if the claim "duplicate[s], supplement[s] or supplant[s]" the remedies provided by 29 U.S.C. § 1132(a)(1)(B) ("§ 502 of ERISA").  Productive MD, 969 F. Supp. 2d at 934.  This is true "even if the state law claim makes no reference to or has no explicit connection with ERISA."  Methodist Healthcare, 929 F.3d at 800 (citing Davila, 542 U.S. at 209).

Courts apply a two-part test to determine whether a state claim is completely preempted by ERISA.  Id.  First, the plaintiff "must be complaining about a denial of benefits under the terms of her ERISA plan."  Id.; see also Cash v. Country Tr. Bank, No. 17-cv-2611-SHM-tmp, 2018 WL 3371122, at *9 (W.D. Tenn. July 10, 2018).  Second, "the plaintiff must only allege the violation of a legal duty (federal or state) that is *dependent* on ERISA or on the ERISA plan's terms."  Methodist Healthcare, 929 F.3d at 800 (emphasis in original).  The claim is completely preempted if it meets both parts of the test.  Id. at 800–01.

        *c.*     *ERISA Saving Clause*

Section 514(b), known as the ERISA saving clause, prevents state law claims "which regulate[] insurance" from § 514(a) preemption.  See 29 U.S.C. § 1144(b)(2)(A); see also Int'l Res., Inc. v. N.Y. Life Ins. Co., 950 F.2d 294, 299 (6th Cir. 1991).  To be saved from ERISA preemption, the claim must (1) have "the effect of transferring or spreading policyholders' risk," (2) "constitute[] an integral part of the policy relationship between the insurer and the insured,"

and (3) only apply to "entities within the insurance industry."  Productive MD, 969 F. Supp. 2d
at 935.

        2.    *Plaintiff's Statutory Bad Faith Claim under Tenn. Code Ann. § 56-7-105*

Plaintiff argues that ERISA does not preempt its statutory bad faith claim under
Tennessee Code Annotated § 56-7-105 and alternatively is saved by ERISA's saving clause.
(See ECF No. 84 at PageID 6366.)  Several district courts have addressed the issue of whether a
Tennessee statutory bad faith denial claim falls within ERISA's saving clause.  See, e.g.,
Productive MD, 969 F. Supp. 2d at 937; Bishop v. Provident Life & Cas. Ins. Co., 749 F. Supp.
176, 177–78 (E.D. Tenn. 1990); Boudra v. Human Health Ins. Co. of Fla., Inc., 730 F. Supp.
1432, 1433–34 (W.D. Tenn. 1990).  Courts have found that such claims are preempted by
ERISA and do not fall within the saving clause.  See Productive MD, 969 F. Supp. 2d at 937
(finding preempted statutory bad faith denial claim because "the state statute does not affect the
spreading of policyholder risk and does not constitute an integral part of the insured-insurer
relationship"); see also Bishop, 749 F. Supp. at 178 (agreeing with "virtually every circuit which
has considered the question" that the statutory bad faith denial claim was preempted by ERISA
and was not saved by the saving clause); Boudra, 730 F. Supp. at 1433 ("Applying the above
test, the court finds that T.C.A. § 57-7-105 does not 'regulate insurance' and therefore does not
fall within the savings clause and is preempted by ERISA.").

The Court agrees with this significant authority supporting the finding that ERISA
preempts Plaintiff's statutory bad faith denial claim.  Plaintiff has not provided the Court with
case law suggesting otherwise.  (ECF No. 84 at PageID 6366.)  The Court will dismiss Plaintiff's
statutory bad faith denial claim.

3.      *The Tennessee Prompt Pay Act, Tenn. Code Ann. § 56-7-120*

The Tennessee Prompt Pay Act requires health insurers to "comply with certain

timeliness and notification requirements for payment submitted by health care providers."

Productive MD, 969 F.2d at 938 (citing Tenn. Code Ann. § 56-7-109).  Section 109 requires that

within 21 days after receiving an electronic claim from a health provider, the insurer must pay

the total covered amount of the claim, pay the amount not in dispute, notify the health services

provider why certain portions will not be paid, and notify the provider why the "claim is not

clean and will not be paid and what substantiating documentation or information is required to

adjudicate the claim."  Tenn. Code Ann. § 56-7-109(b)(1)(B).  The Prompt Pay Act imposes a

1% interest penalty on the improperly denied balance for each month it remains unpaid.  See

Tenn. Code Ann. § 56-7-109(b)(4).

Few courts in the Sixth Circuit have dealt with the question of whether beneficiaries'

claims seeking to recover § 109's 1% interest penalty are preempted by ERISA.  See, e.g.,

Productive MD, 938 F. Supp. 2d at 938; SLF No. 1, LLC v. Un. Healthcare Servs., Inc., No.

2:12–00070, 2014 WL 518222, at *3 (M.D. Tenn. Feb. 7, 2014).  The Middle District of

Tennessee has twice found providers' Prompt Pay Act claims to be preempted by ERISA.  See

Productive MD, 938 F. Supp. 2d at 938 (finding preempted the provider's claims as assignee of

benefits under the plan and finding that the claim did not fall under the saving clause of ERISA);

see also SLF No. 1, 2014 WL 518222, at *3 (finding preempted a Prompt Pay Act claim brought

by a provider both as an assignee and in its own right under ERISA, and not saved by ERISA's

saving clause).  This is the correct result.

Plaintiff asserts that it is not bringing this claim as an "assignee" of the Patient's benefits

plan but rather in its own right as a Tennessee healthcare provider, and therefore can distinguish

itself from these decisions.  (See ECF No. 84 at PageID 6365–66.)  Plaintiff also relies on two out of circuit district court decisions to support its position.  (Id.)  The Court is not persuaded.

First, the Middle District of Tennessee's analysis in SLF No. 1 v. University Healthcare Services, Inc., which explicitly dealt with this issue, is persuasive.  See 2014 WL 518222, at *3. The court concluded that the claim was preempted despite the plaintiff's assertion that it was bringing the claim in its own right rather than as assignee of the plan:

> Wyndham appears to assert its [P]rompt [P]ay [A]ct claim in its capacity as an assignee because (1) it does not claim to have a contractual relationship with UHC, (2) it argues that it is asserting its claims under Counts 3 and 4 on its own behalf and not as an assignee of Stites but does do so with respect to Counts 1 and 2, and (3) it does not contest UHC's assertion that Wyndridge received an assignment of rights from Mrs. Stites. Given the allegations in the Amended Complaint and the absence of any cited authority to the contrary, the Court finds Productive MD persuasive and will dismiss Wyndridge's claims under Tenn. Code Ann. §§ 56–7–105 and 56–7–109 as set forth in Count 1.

Id.

When read in the context of the other claims asserted in the Amended Complaint, Plaintiff brings this claim in its role as assignee of the Patient's right to Plan benefits rather than in its capacity as a healthcare provider.  Plaintiff's claim makes no mention of a contractual relationship apart from its relationship with Defendants as assignee of the Patient's right to benefits, nor does Plaintiff allege some other relationship with Defendants apart from its status as assignee of Plan benefits.  See id.  (See ECF No. 48 at PageID 242 ¶¶ 63–67.)

ERISA's saving clause also does not save these claims.  "[A]lthough the statute is limited to health care insurers, the Tennessee Prompt Pay Act does not have the effect of transferring or spreading policyholders' risk and does not constitute an integral part of the policy relationship between the insurer and the insured."  Productive MD, 969 F. Supp. 2d at 938; see also SLF No. 1, 2014 WL 518222, at *3.

The cases cited by Plaintiff do not readily apply to this case.  First, <u>Baylor University</u>

<u>Medical Center v. Arkansas Blue Cross Blue Shield</u>, 331 F. Supp. 2d 502 (N.D. Tex. 2004), dealt

with Texas's prompt pay statute.  <u>See id.</u> at 511–12.  That statute assumed the existence of a

contract between the "preferred provider and the insurer . . . ."  <u>Id.</u> at 511 (quoting Tex. Code

Ann. Art. 3.70 – 3C, § 3A(e), (e)(1)).  It also explicitly regulated preferred provider

organizations and health maintenance organizations, both of which are formed by contractual

agreements between insurers and providers independent of any relationship created by patients'

assignments of plan benefits.  <u>See id.</u>; <u>see also</u> Health Maintenance Organization, BLACK'S LAW

DICTIONARY (11th ed. 2019) ("A group of participating healthcare providers that furnish medical

services to enrolled members of a group health-insurance plan."); Preferred-Provider

Organization, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A group of healthcare providers . . .

that contract with a third party, such as an insurer, to provide healthcare services at a discounted

cost to covered persons in a given geographic area.").  That the only relationship existing

between Select Specialty and Defendants arose out of the assignment of benefits and not another

preexisting contractual relationship makes the Texas statute and <u>Baylor University</u>'s holding

inapplicable to Plaintiff's case.

In re Managed Care Litigation, 298 F. Supp. 2d 1259 (S.D. Fla. 2003), also does not help

Plaintiff.  The Southern District of Florida found that ERISA did not preempt certain varieties of

prompt pay claims under various state statutes based on the fact that the plaintiff's allegations

arose out of a "separate relationship between the provider and the plan administrator."[6]  <u>Id.</u> at

---

[6] The Southern District of Florida's analysis was not clear with respect to the prompt pay claims preemption issue.
<u>See</u> 298 F. Supp. 2d at 1294 ("The Court finds that in line with its prior analysis that the Providers are bringing their
prompt pay claims in their provider capacities, rather than as assignees of plan benefits, the prompt pay claims are
not preempted by ERISA § 514.").  The Court refers to the only section of the Southern District of Florida's
preemption that addresses the non-assignee relationship between the insurance plan and providers.

1294.  Again, Plaintiff's only relationship with Defendants in this case is through its status as assignee of plan benefits.  Plaintiff cannot assert that this claim does not "relate to" or have a "connection with" the Patient's ERISA benefits plan; it has more than a tenuous or incidental relationship with Plaintiff's underlying ERISA claims.  See Cromwell, 944 F.2d at 1276.

The Middle District of Tennessee, and other courts outside of the Sixth Circuit, have also recognized the distinction between prompt pay claims premised solely on an assignment relationship and those based on the existence of a contractual relationship between the provider and the insurer.  See Productive MD, 969 F. Supp. 2d at 938; see also Mem'l Hermann Hosp. Sys. v. Aetna Health, Inc., No. H–06–00828, 2007 WL 1701901, at *5 (S.D. Tex. June 11, 2007); Torrent & Ramos, M.D., P.A. v. Neighborhood Health P'ship, Inc., No. 05–21668–CIV, 2005 WL 6358852, at *4–5 (S.D. Fla. Sept. 27, 2005).  In Memorial Hermann Hospital Systems v. Aetna Health, Inc., the Southern District of Texas found that Texas's prompt pay statute was not preempted by ERISA because the plaintiffs' claim arose out of "managed care contracts" separate and apart from the ERISA benefits plan and thus were only tangentially related to the ERISA claims.  2007 WL 1701901, at *5.  Similarly, in Torrent & Ramos, M.D., P.A. v. Neighborhood Health Partnership, Inc., the Southern District of Florida noted that a claim brought by a provider in its own capacity can survive ERISA preemption.  2005 WL 6358852, at *4.  The Florida prompt pay statute required the existence of a contractual agreement between the provider and the plan, i.e., a managed care or similar contract.  Id.  There existed no contractual relationship between the provider and the insurer defendant, and the claim was therefore preempted; absent this separate agreement, the provider could "only bring this claim in its capacity as an assignee or third-party beneficiary."  Id. at *4–5.

In summary, Plaintiff's Tennessee Prompt Pay Act claim is preempted by ERISA because Plaintiff only brings this claim in its capacity as assignee of the Patient's rights to plan benefits.

### 4.     Plaintiff's Negligent Misrepresentation Claim

Generally, "[s]tate law causes of action, including promissory estoppel, breach of contract, negligent misrepresentation, and breach of good faith, 'are at the very heart of issues within the scope of ERISA's exclusive regulation and . . . are preempted by ERISA.'"  Weaver v. Prudential Ins. Co., 763 F. Supp. 2d 930, 935 (M.D. Tenn. 2010) (quoting Cromwell, 944 F.2d at 1276).  ERISA does not, however, categorically preempt state negligent misrepresentation claims.  See Lion's Volunteer Blind Ind., Inc. v. Automated Grp. Admin., Inc., 195 F.3d 803, 808 (6th Cir. 1999) ("The district court's description of Cromwell as holding that all misrepresentation claims are preempted by ERISA is . . . inaccurate.").  "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit."  Cromwell, 944 F.2d at 1276; see also PONI, 399 F.3d at 703 ("In reviewing whether ERISA preempts a state-law negligent-misrepresentation claim, . . . ERISA preemption . . . turn[s] on . . . the true nature of the issues underlying the claim.").

ERSA preempts a state law negligent misrepresentation claim "[w]here resolution of the [] claim necessarily requires evaluation of the plan and the parties' performance pursuant to it . . . ."  Thurman v. Pfizer, Inc., 484 F.3d 855, 862 (6th Cir. 2007) (quoting PONI, 399 F.3d at 703).  "In the alternative, where the resolution of a misrepresentation claim does not require interpreting the parties' responsibilities under the plan, or where the requested remedy refers to the plan only for the purpose of defining 'specific, ascertainable damages,' we have held that

such claims are not preempted." Id. (quoting Marks v. Newcourt Credit Grp., Inc., 342 F.3d 444, 452 (6th Cir. 2003)).

In the instant case, ERISA preempts Plaintiff's negligent misrepresentation claim. Although the claim does not fall within one of the recognized categories of state law claims that ERISA preempts, see Thurman, 484 F.3d at 862, Plaintiff's negligent misrepresentation claim "implicate[s] the relations among the traditional ERISA plan entities." Parkridge Med. Ctr., Inc. v. CPC Logistics, Inc. Grp. Ben. Plan, No. 1:12–CV–124, 2013 WL 3976621, at *21 (E.D. Tenn. Aug. 2, 2013) (quoting PONI, 399 F.3d at 698). HealthSmart and AMCS allegedly made representations to Plaintiff regarding precertification of benefits in its capacity as Plan fiduciaries, with Plaintiff in the position of assignee of Plan benefits. (See Am. Compl., ECF No. 48 ¶¶ 29, 31.) The claim necessarily implicates the relationship between an ERISA beneficiary and fiduciary. See id.

Moreover, if all Defendants made false or misleading statements to Plaintiff after or at the time Plaintiff admitted and treated the Patient, all these claims "relate to" or have a "connection with" an ERISA plan. Plaintiff's negligent misrepresentation claim "seek[s] 'remedies for misconduct growing out of the administration of' an ERISA plan." See Steele, 499 F. Supp. 2d at 1040 (quoting Briscoe, 444 F.3d at 497). Plaintiff asserts that HealthSmart and AMCS misrepresented the Patient's coverage under the Plan, and that all other "administrators or fiduciaries for the Plan" were required to follow those representations. (ECF No. 48 ¶ 89.) Plaintiff seeks to recover damages for representations made by the Plan Administrators acting pursuant to their authority provided by the Plan. See id. It therefore cannot be said that the close relationship between these claims and the Plan are "tenuous, remote, or peripheral[.]" Cromwell, 944 F.2d at 1276.

The cases cited by Plaintiff do not save its claim.  In <u>Franciscan Skemp Healthcare, Inc.</u> <u>v. Central States Joint Board Health and Welfare Trust Fund</u>, 538 F.3d 594 (7th Cir. 2008), the Seventh Circuit found that the provider's negligent misrepresentation claim was brought in its own right and not in its capacity as assignee because the provider "acknowledge[d] that [the patient] [was] not entitled to benefits," given that the patient "failed to make her [plan] premium payments."  <u>Id.</u> at 598.  The Seventh Circuit reasoned, "It would be odd indeed, then, to conclude that Franciscan Skemp is standing in Romine's shoes as a beneficiary seeking benefits when Franciscan Skemp acknowledges that Romine is not actually entitled to any benefits."  <u>Id.</u> Unlike the provider in <u>Franciscan</u>, Plaintiff asserts *both* that it should receive benefits under the Plan and that it should receive benefits based on HealthSmart's and AMCS's representations regarding coverage after the Patient assigned its benefits to Select Specialty.

The Court is also not persuaded by the Northern District of Alabama's reasoning in <u>Mitchell-Hollingsworth Nursing & Rehabilitation, Center, LLC v. Blue Cross and Blue Shield of</u> <u>Michigan</u>, 919 F. Supp. 2d 1209 (N.D. Ala. 2013).  The Northern District of Alabama relied on <u>Franciscan</u> to find similar claims not preempted by ERISA, but it stated, "The fact that [the patient] executed an assignment of benefits in favor of BCBS-Michigan does not alter the court's conclusion."  <u>Id.</u> at 1219.  This ignores a key part of the Seventh Circuit's analysis in <u>Franciscan,</u> which relied almost exclusively on the fact that the provider acknowledged that the plan did not cover the Plaintiff, that is, there were no plan benefits to assign.  <u>See</u> 538 F.3d at 598.

The Middle District of Tennessee's analysis in <u>SLF No. 1, LLC v. United Healthcare</u> <u>Services, Inc.</u> is equally unpersuasive.  The court relied primarily on <u>Memorial Hospital Systems</u> <u>v. Northbrook Life Insurance Co.</u>, 904 F.2d 236 (5th Cir. 1990), to find that ERISA did not preempt a provider's negligent misrepresentation claim arising out of pre-treatment coverage

certifications made by an ERISA administrator.  See 2014 WL 518222, at *4–5.  The Court finds

two reasons why it will not follow the reasoning of Memorial Hospital.

First, the Sixth Circuit appears to have rejected Memorial's reasoning in Cromwell v.

Equicor-Equitable HCA Corp.  See 944 F.2d at 1276.  In Cromwell, the Sixth Circuit found that

plaintiffs' state law negligent misrepresentation and promissory estoppel claims sought "the

recovery of benefits from the Beckman plan for health services rendered to the [patients]."  944

F.2d at 1276.  Such claims were "at the very heart of issues within the scope of ERISA's

exclusive regulation," and were thus preempted.  Id.  Allowing the claims to proceed "would

affect the relationship between plan principals by extending coverage beyond the terms of the

plan."  Id.  In dissent, Judge Jones stated that he would have relied on Memorial Hospital, as that

case addressed the "precise question" at issue in Cromwell.  See id. at 1283–84 (Jones, J.,

dissenting) ("I believe that the Fifth Circuit's analysis in Memorial Hospital is correct, and I

would follow it to find no preemption of Cromwell's promissory estoppel and negligent

misrepresentation claims.").  The Court infers from the majority's rejection of the dissent's

position that it implicitly declined to follow Memorial Hospital's reasoning.  The Eastern District

of Tennessee has also recognized this disagreement.  See Parkridge Med. Ctr., 2013 WL

3976621, at *23 ("[W]hile Cromwell appears to be the minority among the circuits, it does

appear to be good law.").

Second, the timing of the patient's assignment of benefits plays a key role in determining

whether ERISA preempts a negligent misrepresentation claim.  In Memorial Hospital, the

provider relied upon representations made by the insurance company and its agent regarding the

patient's coverage when it admitted the patient but *before* it accepted an assignment of benefits.

See 904 F.2d at 238.  The hospital accepted the assignment after treating the patient, only to later

have its claim for benefits denied.  Id.  The Fifth Circuit concluded that the negligent

misrepresentation claim, which arose out of representations made *before* the plaintiff accepted

the assignment, did not seek "benefits from the plan nor claim[ed] that the plan acted improperly

in processing and denying Memorial's claim."  Id. at 250.

Although like in Memorial Plaintiff seeks to recover damages on the basis that but for

Defendants' negligent misrepresentations it would not have "accepted the financial risk of

providing medical treatment to [the Patient]," Plaintiff had already accepted the risk of seeking

benefits from an ERISA-covered plan.  Plaintiff accepted the assignment at the time the Patient

was admitted to the long-term care facility, and Plaintiff does not allege that it would not have

accepted the assignment but for Defendants' representations regarding coverage.  (See Amended

Complaint, ECF No. 48 ¶¶ 19–20, 31.)  While Plaintiff may have relied on these representations

after it admitted the Patient, those representations would affect the relationships between ERISA

plan beneficiaries and principals, and thus related to ERISA plan benefits.  See Cromwell, 944

F.3d at 1276.  Such representations would "affect the relationship between plan principals by

extending coverage beyond the terms of the plan," and thus involve issues "at the very heart . . .

of ERISA's exclusive regulation . . . ."  Cromwell, 944 F.2d at 1276; see also Mem'l Hosp. Sys.,

904 F.2d at 245 ("ERISA preempts state law claims, based on . . . negligent misrepresentation,

that have the effect of orally modifying the express terms of an ERISA plan and increasing plan

benefits for participants or beneficiaries who claim to have been misled.").

The effect of the timing of an assignment of benefits also makes sense when considering

the purposes of ERISA.  The Fifth Circuit in Memorial Hospital reasoned that preempting

negligent misrepresentation claims brought by providers regarding coverage representations

made before the assignment of benefits would "discourag[e] health care providers from

becoming assignees [and] would undermine Congress's goal of enhancing employees' health and welfare benefit coverage."  904 F.2d at 247 (quoting Hermann Hosp. v. MEBA Med. & Benefits Plan, 845 F.2d 1286, 1289 n.13 (5th Cir. 1988)) (internal quotation marks omitted).  The Fifth Circuit explained its rationale:

> If providers have no recourse under either ERISA or state law in situations . . . where there is no coverage under the express terms of the plan, but a provider has relied on assurances that there is such coverage [], providers will be understandably reluctant to accept the risk of non-payment, and may require up-front payment by beneficiaries—or impose other inconveniences—before treatment will be offered.  This does not serve, but rather directly defeats, the purpose of Congress in enacting ERISA.

Id. at 247–48.  Plaintiff's case does not implicate this rationale.  Plaintiff already accepted the assignment of benefits and only reached out to the Plan Administrators at or about the time it admitted the patient.  Plaintiff was therefore not "reluctant to accept the risk of non-payment" when it agreed to the assignment of rights at the time of the Patient's admission.

Furthermore, the fear espoused by Memorial Hospital, that providers would be left little recourse if they accepted representations prior to treating the patient but were ultimately barred from bringing a negligent misrepresentation claim, has been alleviated by subsequent case law.  See 904 F.2d at 247.  The Sixth Circuit has recognized a federal common law claim of equitable estoppel available to ERISA plan beneficiaries.  See Bloemaker v. Laborers' Local 265 Pension Fund, 605 F.3d 436, 440 (6th Cir. 2010).  Plaintiff's negligent misrepresentation claim (and its promissory estoppel claim, see infra) could have been brought as ERISA equitable estoppel claims.  Plaintiff, however, has failed to plead these claims, preventing the Court from reading them into its Amended Complaint.  (See ECF No. 48 ¶¶ 51–61.)

In summary, the Court finds that ERISA preempts Plaintiff's negligent misrepresentation claim.

5.      *Plaintiff's Promissory Estoppel Claim*

As stated <u>supra</u>, state law promissory estoppel claims are generally preempted by ERISA.

<u>See</u> <u>Cromwell</u>, 944 F.2d at 1276; <u>see also</u> <u>Weaver</u>, 763 F. Supp. 2d at 935.  Promissory estoppel

claims "are at the very heart of issues within the scope of ERISA's exclusive regulation and, if

allowed, would affect the relationship between plan principals by extending coverage beyond the

terms of the plan."  <u>Cromwell</u>, 944 F.3d at 1276; <u>see also</u> <u>Loffredo v. Daimler AG</u>, 500 F. App'x

491, 497 (6th Cir. 2012) (finding preempted the plaintiffs' promissory estoppel claims because

they would duplicate ERISA's remedy and would "amount to an impermissible alternative to

ERISA's reticulated enforcement regime . . .").

Plaintiff seeks to bind Defendants to representations made by both HealthSmart and

AMCS as administrators of the Plan.  (<u>See</u> ECF No. 48 ¶¶ 74–85.)  Plaintiff's promissory

estoppel claim falls within one of the recognized categories of claims expressly preempted by

ERISA as having an impermissible connection with an ERISA plan; granting relief under

Plaintiff's promissory estoppel theory would bind the Plan Administrators to pay Plaintiff's

claims based on representations made prior to the admission of the Patient.  <u>See</u> <u>PONI</u>, 399 F.3d

at 698 (finding preempted as relating to an ERISA benefits plan claims that attempt to "bind

employers or plan administrators to particular choices"); <u>see also</u> <u>Parkridge</u>, 2013 WL 3976621,

at *22 ("The state law contract claim, and for that matter, the promissory estoppel claim, attempt

to bind the ERISA fiduciary to a particular choice: to pay Plaintiff for services rendered pursuant

to the plan.").  Allowing Plaintiff to recover benefits under its promissory estoppel claim would

"amount to an impermissible alternative to ERISA's reticulated enforcement regime."  <u>Loffredo</u>,

500 F. App'x at 497.

Plaintiff's arguments to the contrary are not persuasive.[7]  Plaintiff cannot succeed in arguing that it is asserting both its promissory estoppel and negligent misrepresentation claims "in its own right" rather than as assignee of the Patient's benefits, for similar reasons provided with respect to Plaintiff's Prompt Pay Act claim and negligent misrepresentation claim.

As stated supra, allowing recovery on the basis of allegedly misleading statements made by Plan Administrators to Plaintiff regarding the Patient's coverage under the Plan would provide Plaintiff with an alternative enforcement mechanism to enforce the terms of the Plan and would impermissibly bind the Plan to statements made by Plan Administrations.  See Loffredo, 500 F. App'x at 497; see also Parkridge, 2013 WL 3976621, at *22.  Plaintiff may be correct that the Plan did not fulfill the promises it made to Plaintiff regarding coverage of the Patient's treatment (see ECF No. 84 at PageID 6370), but these claims nonetheless relate to the Plan.  See Methodist Healthcare, 929 F.3d at 800 (noting that express preemption under ERSIA "applies broadly" and generally displaces "'all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements.'" (quoting Mackey v. Lanier Collection Agency & Serv., Inc., 486 US. 825, 829 (1988))).

In summary, Plaintiff's state law promissory estoppel claim against Defendants is expressly preempted by ERISA.  Plaintiff seeks to bind the Plan to representations made by Plan Administrators acting pursuant to their authority under the Plan, and the claim provides Plaintiff an alternate enforcement mechanism to recover Plan benefits.

---

[7] Plaintiff's arguments in support of its negligent misrepresentation claims and its promissory estoppel claims overlap substantially, which the Court addressed both supra and here.

6.      *Plaintiff's Tennessee and Federal Declaratory Judgment Act Claims*

The Court will dismiss Plaintiff's claims for declaratory judgments as to AMCS and the Langston Defendants.[8]  Plaintiff asserts in its Response to AMCS's and the Langston Defendants' Motions to Dismiss that its declaratory judgment claims should proceed because its claims regarding the misrepresentations made by AMCS and HealthSmart relate to independent legal rights, not ERISA benefits.  (ECF No. 98 at PageID 6535.)

This is not the case.  See supra Secs. III.E.1–6.  Because Plaintiff has not responded to Defendants' arguments on the issue, the Court finds that any challenges beyond those presented by Plaintiff in its Response are forfeited.  See Verble v. Morgan Stanley Smith Barney, LLC, 148 F. Supp. 3d 644, 650 (E.D. Tenn. 2015) ("It is well established in the Sixth Circuit that failure to respond to an argument made in support of a Rule 12(b)(6) motion to dismiss a claim results in a forfeiture of the claim.").  As such, Plaintiff's claims for declaratory judgment under both federal and state law are dismissed as to AMCS and the Langston Defendants.

## IV.   CONCLUSION

For the reasons set forth above, the Langston Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**, AMCS's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**, and HealthSmart's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

Plaintiff's state law claims as to all Defendants are **DISMISSED WITH PREJUDICE**. Plaintiff's state and federal declaratory judgment act claims are **DISMISSED WITH PREJUDICE** as to AMCS and the Langston Defendants, but may proceed with respect to

---

[8] Defendant HealthSmart did not address Plaintiff's claims for declaratory judgments in its Motion, and the Court will not dismiss these claims as to HealthSmart.

HealthSmart.  Plaintiff's Breach of Fiduciary Duty claims as to the Langston Defendants and

AMCS are **DISMISSED WITH PREJUDICE** but may proceed with respect to HealthSmart.

       **SO ORDERED**, this 24th of July, 2020.

                    /s/ Jon P. McCalla
                    JON P. McCALLA
                    UNITED STATES DISTRICT JUDGE