**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| SELECT SPECIALTY HOSPITAL-MEMPHIS, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:19-cv-02654-JPM-atc |
| v. | ) | |
| | ) | |
| THE TRUSTEES OF THE LANGSTON COMPANIES, INC. BENEFIT PROGRAM; THE LANGSTON COMPANIES, INC.; ASSOCIATED MEDICAL CONSULTING SERVICES, LLC; and HEALTHSMART BENEFIT SOLUTIONS, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING THE DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT
ORDER DENYING AS MOOT THE PARTIES' MOTIONS FOR JUDGMENT ON
THE ADMINISTRATIVE RECORD
ORDER GRANTING DEFENDANT HBS'S MOTION TO DISMISS**

Before the Court are Defendants The Trustees of the Langston Companies, Inc. Benefit Program ("the Plan") and The Langston Companies, Inc.'s ("Langston") (collectively "the Langston Defendants") Motion for Summary Judgment Regarding Select's Failure to Exhaust Administrative Remedies and Time-Barred Claims, filed on June 16, 2020 (ECF No. 129) and Motion for Judgment on the Administrative Record, filed on July 30, 2020 (ECF No. 144); Defendant Associated Medical Consulting Services, LLC's ("AMCS") Motion for Summary Judgment or, in the Alternative, for Judgment on the Administrative Record, filed on July 30, 2020 (ECF No. 142); Defendant Healthsmart Benefit Solutions, Inc.'s ("HBS")

Motion to Dismiss Plaintiff's Claims for Breach of Fiduciary Duty and Declaratory Judgment, filed on July 30, 2020 (ECF No. 145) and Motion for Summary Judgment or, in the Alternative, Judgment on the Administrative Record, filed on July 30, 2020 (ECF No. 146); and Plaintiff Select Specialty Hospital-Memphis, Inc.'s ("Select") Motion for Judgment on the Administrative Record and/or for Summary Judgment, filed on July 30, 2020 (ECF No. 143).

Plaintiff argues that the Court should review Defendants' partial denial of benefits under the *de novo* standard of review and that Defendants' denial of Select's claims was improper and incorrect. (ECF No. 143-1 at PageID 10269–80.) Plaintiff further argues that HBS is liable for breach of fiduciary duty under ERISA[1] based on HBS's misrepresentations to Select. (Id. at PageID 10281–82.) Finally, Plaintiff moves for attorney's fees and costs and for an award of pre-judgment interest. (Id. at PageID 10282–84.)

In their respective Motions for Summary Judgment and/or Judgment on the Administrative Record, each Defendant argues that (1) Select's claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) is barred for failure to exhaust administrative remedies; (2) Select's claims are time-barred; and (3) if the merits of Select's claims are reached, the arbitrary and capricious standard of review applies and the Plan Administrator's decision to deny portions of Select's claim for benefits was fair and rational and in accordance with the Plan's terms. (See ECF Nos. 129-1 at PageID 8423–37, 142-1 at PageID 10234–36, 144 at PageID 10346–57, 146-1 at PageID 10397.)

Defendants AMCS and HBS also argue that they are not an ERISA fiduciary for purposes of Select's claims. (See ECF Nos. 142-1 at PageID 10229–33, 146-1 at PageID 10394–96.) Finally, Defendant HBS argues that Plaintiff has no viable legal remedy as to

---

[1] The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.*

HBS because HBS "does not maintain any funds necessary to submit payment for the claims alleged by Plaintiff." (ECF No. 146-1 at PageID 10397–98.)

In its Motion to Dismiss, Defendant HBS argues that (1) Select's breach of fiduciary duty claim against HBS is subsumed by its ERISA benefits claim and (2) ERISA preempts Select's Tennessee and Federal Declaratory Judgment Act claims against HBS. (ECF No. 145-1 at PageID 10376–82.)

The Langston Defendants and AMCS filed their Responses in Opposition to Plaintiff's Motion on August 27, 2020. (ECF Nos. 150–51, 156.) Defendant HBS filed its Response in Opposition to Plaintiff's Motion on September 8, 2020. (ECF Nos. 161 & 162; see also ECF Nos. 157–60.) The Defendants all reiterate their arguments that the arbitrary and capricious standard is applicable in this case and that, regardless, the Plan's determinations should be upheld by the Court because they are fair, reasonable, rational and/or correct. (ECF Nos. 150 at PageID 10423, 10425–26, 156 at PageID 10533–48, 161 at PageID 10603–06, 10608–09.) The Defendants all also argue that Plaintiff's claim for attorneys' fees, costs and/or pre-judgment interest is premature. (ECF Nos. 150 at PageID 10426–27, 156 at PageID 10548–49, 161 at 10611.)

Defendants AMCS and HBS also reiterate their arguments that they are not ERISA fiduciaries. (ECF Nos. 150 at PageID 10423–25 & 161 at PageID 10606–08.) Finally, Defendant HBS argues that Plaintiff's declaratory judgment act claims against it should be dismissed because (1) Plaintiff did not address them in its Motion, (2) ERISA preempts the Tennessee Declaratory Judgment Act and (3) federal declaratory judgment in an ERISA action is only available through 29 U.S.C. § 1132(a)(3) and Plaintiff cannot obtain relief

pursuant to § 1132(a)(3) if § 1132(a)(1)(B) provides an adequate remedy.  (ECF No. 161 at PageID 10609–11.)

Plaintiff filed its Response in Opposition to the Langston Defendants' Motion for Summary Judgment on July 17, 2020 and its Responses in Opposition to each of the Defendants' remaining Motions on August 27, 2020.  (ECF Nos. 140, 152–55.)  On the first summary judgment issue of exhaustion of administrative remedies, Plaintiff argues that (1) it did appeal Defendants' underpayments; (2) whether Select appealed or not, it is deemed to have exhausted all administrative remedies due to Defendants' failure to follow their own claim procedures; and (3) any failure to exhaust remedies is excused due to the futility exception.  (ECF No. 140 at PageID 10067–75; see also ECF Nos. 153 at PageID 10479 & 154 at PageID 10519–20.)  On the second summary judgment issue of whether Select's claims are time-barred, Select argues that its claims were timely filed because (1) the Plan's limitations period was never triggered due to Defendants' failure to comply with adverse benefit determination notice requirements or, alternatively, (2) the Plan's limitations period is unenforceable under Tennessee law.  (ECF No. 140 at PageID 10078–81.)

Plaintiff also argues that Defendants AMCS and HBS are both fiduciaries of the Plan because they exercised discretionary authority in adjudicating Select's claims.  (ECF Nos. 153 at PageID 10474–79 & 154 at PageID 10510–11, 10513–18.)  Additionally, Plaintiff argues that HBS is a fiduciary of the Plan because it exercised control over Plan assets.  (ECF No. 154 at PageID 10511–13.)  Plaintiff asserts that it has a cognizable claim against HBS because any entities who administer ERISA plans are proper defendants in a recovery of benefits claim.  (Id. at PageID 10518–19.)

Regarding Defendants' Motions for Judgment on the Administrative Record, Plaintiff reiterates its argument that the applicable standard of review is *de novo*, asserting that the Plan Administrator was not sufficiently involved in the decision to deny benefits to get the benefit of an arbitrary and capricious standard of review.   (ECF No. 152 at PageID 10452–54.) Plaintiff further argues that the denial of its claims was improper and incorrect because:

> The Plan's exclusionary provisions relating to "never events" and ["]hospital acquired conditions" did not apply to any of the items or services provided by Select, there is no provision in the Plan that allows the Defendants to treat Select as if it were a [Skilled Nursing Facility] instead of a [Long-Term Care Hospital] in order to reduce its reimbursement rate, and all of the care provided by Select was medically necessary.

(ECF Nos. 153 at PageID 10479 & 154 at PageID 10519; see generally ECF No. 152.)

Finally, in its Response to HBS's Motion to Dismiss, Plaintiff first objects to the Motion in its entirety because it was filed after the deadline for filing motions to dismiss. (ECF No. 155 at PageID 10522–23.)   Plaintiff then argues that its breach of fiduciary duty claim against HBS is viable because it arises out of a separate injury, specifically, HBS's misrepresentations to Select about the extent of the benefits under the Plan.   (Id. at PageID 10525–29.)   Finally, Plaintiff argues that because its Federal Declaratory Judgment Act claim is not based on state law, it is not preempted by ERISA.   (Id. at PageID 10530.)

Plaintiff filed its Replies in support of its Motion for Judgment on the Administrative Record and/or Summary Judgment on September 10 and September 14, 2020.   (ECF Nos. 166–67, 169.)   The Langston Defendants filed their Reply in support of their Motion for Summary Judgment on July 31, 2020 (ECF No. 147) and their Reply in support of their Motion for Judgment on the Administrative Record on September 10, 2020 (ECF No. 168). Defendants AMCS and HBS filed their Replies in support of their Motions for Summary Judgment or, in the Alternative, for Judgment on the Administrative Record on September 10,

2020.  (ECF Nos. 164–65.)  And Defendant HBS filed its Reply in support of its Motion to Dismiss on September 8, 2020.  (ECF No. 163.)

For the reasons set forth below, Defendants' Motions for Summary Judgment are **GRANTED**, the Parties' Motions for Judgment on the Administrative Record are **DENIED AS MOOT** and Defendant HBS's Motion to Dismiss is **GRANTED**.

## I.    BACKGROUND

### A.  *Factual Background*

This action arises out of Defendants' partial denial of benefits and nonpayment of medical expenses incurred by Plaintiff as a result of treatment rendered to a patient[2] ("the Patient") covered by an ERISA benefits plan.  (Select's Statement of Undisputed Material Facts ("Select SOF"), ECF No. 143-2 ¶¶ 1, 37, 57).  After seven weeks of treatment at Methodist University Hospital following an emergency surgery to repair a dissecting aortic aneurysm, the Patient was admitted to Select on October 21, 2016 for continued care relating to respiratory failure, acute kidney injury, hypoxic ischemic encephalopathy, an open chest wound and a sacral/gluteal pressure wound.  (Id. ¶¶ 14, 17.)  The two wounds, one on the Patient's chest and one on his sacral/gluteal area, were pre-existing wounds documented at the time the Patient was admitted to Select.  (Id. ¶ 21.)  The Patient remained at Select from October 21 through November 11, 2016 ("First Admission").  (Id. ¶¶ 17, 22.)

At the time of Patient's admission to Select, an assignment of benefits was executed by the Patient's conservator, which stated:

> In consideration of the services to be provided by [Select], I hereby irrevocably assign and transfer to [Select] such insurance benefits and/or benefits plans, including the rights to benefits for treatment provided by the Hospital and the rights to pursue all appeals and remedies available under the policies and/or plans and under state and federal law in the event that benefits are not paid.  I

---

[2] The Patient is identified in Exhibit 1 to the First Amended Complaint.  (See ECF No. 49.)

specifically authorize [Select] and/or its agents and attorneys to file any and all claims and appeals through the highest appeal level offered by the payor.

(Id. ¶ 20.)

On November 11, 2016, the Patient was transferred to St. Francis Hospital for debridement of his chest wound and reconstruction surgery, which was required to remove portions of surgical sponges left in Patient by Methodist Hospital. (Id. ¶ 22; see also The Langston Defendants' Joint Statement of Undisputed Material Fact ("Langston SOF"), ECF No. 129-2 ¶ 3.) The Patient was discharged to Select on November 17, 2016 and remained at Select until May 18, 2017, at which time he was discharged to hospice ("Second Admission"). (Select SOF, ECF No. 143-2 ¶¶ 23, 25.)

Langston is the Patient's former employer. (Id. ¶ 1.) Plaintiff was covered under the Plan as a benefit of his employment. (Id.) The Plan document lists The Trustees of the Langston Companies, Inc. Benefit Program as the "Plan Administrator" as well as the "Plan Sponsor" and HBS as the "third party administrator". (Id. ¶ 3.) AMCS did not have a contract with either the Langston Defendants or HBS but reviewed and audited charges submitted by Select. (Id. ¶ 5; see also AMCS's Statement of Undisputed Material Facts, ECF No. 142-2 ¶ 2.)

At the time of his admission at Select, the Patient had been continuously covered by the Plan for 12 months or more. (Select SOF, ECF No. 143-2 ¶ 11.) He met his deductible for 2016 and 2017. (Id. ¶ 13.) The Plan had unlimited benefits for participants who had been covered by the Plan for 12 consecutive months and no lifetime limits on benefits under the Plan. (Id. ¶¶ 9–10.) The Plan provided that allowable fees for out-of-network providers were equal to 150% of current Medicare allowable amounts. (Id. ¶ 7.)

Select's charges for the Patient's First Admission totaled $133,850.46.  (Id. ¶ 30.) HBS paid Select $20,667.39 for care and treatment provided to Patient during his First Admission.  (Id. ¶ 36.)  Select's charges for the Patient's Second Admission totaled $945,376.53.  (Id. ¶ 38.)  HBS paid Select $191,381.56 for care and treatment provided to Patient during his Second Admission.  (Id. ¶ 56.)

Select received four Remittance Advice documents,[3] one dated April 17, 2017 for the Patient's First Admission and three dated June 26, 2017 for the Patient's Second Admission. (Langston SOF, ECF No. 129-2 ¶ 7.)  The codes cited in these documents regarding the determination that certain services were not covered by the Plan are: (1) "A3 – Maximum Allowable amount based on plans fee limit;" (2) "H0 – Hospital Acquired Conditions as defined by the Centers for Medicare and Medicaid Services are not covered under the Plan;" (3) IE – This service/supply is ineligible under your plan;" and (4) "BL – Benefit limited.  See plan document."  (ECF Nos. 74-1 at PageID 816 & 74-2 at PageID 825, 829 & 839.)  Other communications between the Defendants and Select indicate that "conditions were denied as excluded as never events, hospital acquired conditions, the result of malpractice and complications of non-covered injuries."  (ECF No. 156-1 ¶ 37; see also ECF Nos. 115-1 at PageID 7403–13 & 117 at PageID 7783–89.)

B. *Procedural Background*

This action was filed on September 26, 2019 (ECF No. 1); the First Amended Complaint was filed on December 5, 2019 (ECF No. 48).  Plaintiff asserted claims under (1) the Tennessee and federal declaratory judgment acts, seeking a declaratory judgment

---

[3] Select disputes the Langston Defendants' characterization of these documents as adverse benefit determinations but does not dispute that Select received them.  (See ECF No. 140-1 ¶ 7.)  Because the documents themselves are titled "Remittance Advice," the Court refers to them as such in this background section.  (See ECF Nos. 74-1 at PageID 815 & 74-2 at PageID 824, 828 & 839.)  See discussion infra, pp. 14–17.

establishing Defendants' reimbursement obligations to Select for its treatment of the Patient; (2) under ERISA to enforce and obtain benefits and for breach of fiduciary duties; and (3) under Tennessee state law for violation of the Tennessee Prompt Pay Act, Bad Faith Refusal to Pay, Promissory Estoppel and Negligent Misrepresentation.  (ECF No. 48 ¶¶ 47–96.)

On March 9, 2020, all the Defendants filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF Nos. 68, 88, 89.)  Defendant HBS asserted that Select failed to adequately allege that HBS was an ERISA fiduciary and that Select's state law claims were preempted by ERISA.  (See generally ECF No. 68-1.)  The Langston Defendants and Defendant AMCS asserted that Select could not simultaneously maintain its breach-of-fiduciary duty and wrongful-denial-of-benefits claims, that Select failed to plead exhaustion of administrative remedies and that ERISA preempted Select's state law claims.  (See generally ECF Nos. 88-1 & 89-1.)

On July 24, 2020, this Court entered an Order Granting in Part and Denying in Part each of the Defendants' Motions to Dismiss.  (ECF No. 141.)  The July 2020 Order dismissed Select's breach-of-fiduciary claim and declaratory judgment claims as to the Langston Defendants and Defendant AMCS and Select's state law claims as to all the Defendants.  (Id. at PageID 10215–16.)  Remaining before the Court are Select's wrongful-denial-of-benefits claims against all the Defendants and Select's declaratory judgment and ERISA breach-of-fiduciary-duty claims against Defendant HBS.

## II.    LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that

fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448-49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587. "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted); see also Kalich v. AT & T Mobility, LLC, 679 F.3d 464, 469 (6th Cir. 2012).

In order to "show that a fact is, or is not, genuinely disputed," both parties must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case'" (quoting Celotex, 477 U.S. at 325)). "Credibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"  Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'"  Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'"  Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 251-52).  Summary judgment "'shall be entered' against the nonmoving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'"  Rachells v. Cingular Wireless Employee Services, LLC, No. 1:08CV02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990)).  "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor."  Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 251).  "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present "affirmative evidence" to support his/her position."  Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Liberty

Lobby, 477 U.S. at 247-254; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)).  "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." Rachells, 2012 WL 3648835, at *2 (quoting Thomas v. Christ Hosp. and Med. Ctr., 328 F.3d 890, 894 (7th Cir. 2003)).  Statements contained in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient.  See Mitchell, 964 F.2d at 584-85.

Although "summary judgment procedures set forth in [Fed. R. Civ. P.] 56 are inapposite to ERISA actions and thus should not be utilized in their disposition," see Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J. concurring), "courts have increasingly recognized a summary judgment motion is the proper vehicle for considering a defendant's claim that a plaintiff has failed to exhaust administrative remedies before filing a civil action."  Gunn v. Bluecross Blueshield of Tenn., Inc., Civil Case No. 1:11-CV-183, 2012 WL 1711555, at *4 (E.D. Tenn. May 15, 2012) (collecting cases). "[W]hen a defendant in an ERISA action raises an ERISA plaintiff's failure to exhaust administrative remedies as an *affirmative defense*, the Court concludes the proper means to raise such a challenge is through an appropriately supported motion under Fed. R. Civ. P. 56." Id. (emphasis added).  Accordingly, this Court will apply the summary judgment standard to the Defendants' affirmative defense that Plaintiff failed to exhaust its administrative remedies.

## III.   ANALYSIS

### A.  *Plaintiff's ERISA Wrongful Denial of Benefits Claims*

The Court first addresses the Parties' arguments regarding the requirement for Select to exhaust its administrative remedies prior to bringing this lawsuit, specifically whether: (1)

Select received an adverse benefit determination; (2) Select properly appealed any adverse benefit determination; (3) the Court should deem as exhausted Select's administrative remedies based on Defendants' failure to comply with applicable notice requirements; and (4) any appeals brought by Select would have been futile.

The Sixth Circuit has "long interpreted ERISA to include an exhaustion requirement." Gunn, 2012 WL 1711555, at *5 (citing Hill v. Blue Cross and Blue Shield of Mich., 409 F.3d 710, 717 (6th Cir. 2005) & Miller v. Metro. Life Ins. Co., 925 F.2d 979, 986 (6th Cir. 1991)). "The exhaustion requirement 'enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions.'" Kennedy v. Life Ins. Co. of N. Am., 262 F. Supp. 3d 481, 489 (W.D. Ky. 2017) (quoting Ravencraft v. UNUM Life Ins. Co. of Am., 212 F.3d 341, 343 (6th Cir. 2000)).

But the Sixth Circuit has also recognized limited exceptions to the exhaustion requirement, primarily "where it would be futile to pursue an administrative remedy or such a remedy would be inadequate." Wallace v. Oakwood Healthcare, Inc., 954 F.3d 879, 887 (6th Cir. 2020) (citing Hitchcock v. Cumberland Univ. 403(b) DC Plan, 851 F.3d 552, 560 (6th Cir. 2017)). In Wallace, the Sixth Circuit also recognized an exception established directly by the ERISA regulations: "'[i]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant *shall be deemed to have exhausted the administrative remedies available under the plan*… on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.'" Id. (quoting 29 C.F.R. § 2560.503-1(l) (2003)[4]).

---

[4] 29 C.F.R. § 2560.503-1(l)(2)(ii) now provides that a claimant is deemed to have exhausted the available administrative remedies whenever the plan fails to "strictly adhere to all the requirements of section with respect

Defendants argue that Select's ERISA claims must be dismissed because Select failed to exhaust its administrative remedies under the Plan.  (ECF No. 129-1 at PageID 8423–33; see also ECF Nos. 142-1 at PageID 10234–35 & 146-1 at PageID 10397.[5])  Select argues that because the Plan failed to provide proper notice of an adverse benefit determination and pursuing further administrative remedies would have been futile, the Court must excuse any failure of Select's to exhaust administrative remedies.  (ECF No. 140 at PageID 10067–78.) In its Reply, the Langston Defendants argue that "[t]he benefit denials collectively and substantially comply with ERISA's requirements for a full and fair review."  (ECF No. 147 at PageID 10403.)

Defendants are correct that Select did not properly appeal any of the claims decisions as required by the Plan.  The Plan requires that prior to bringing suit, Select must exhaust at least two written appeals that are mailed or faxed to the designated address.  (ECF No. 129-1 at PageID 8424; see also ECF No. 52-1 at PageID 314–16.)  The first appeal must be filed in writing within 180 days of receipt of the notice of an adverse benefit determination; the second appeal must be filed within 60 days of receipt of notice of the Plan's adverse decision regarding the first appeal.  (ECF No. 129-1 at PageID 8424–25; see also ECF No. 52-1 at PageID 314–16.)

The Parties dispute whether Select received adverse benefit determinations.  Select does not dispute that it received the "Remittance Advice documents," one on April 17, 2017

---

to a claim."  Id. (2018).  However, this new language only applies to claims "filed under a plan after April 1, 2018."  29 C.F.R. § 2560.503-1(p)(3).

[5] Because Defendants AMCS and HBS both rely on and incorporate the Langston Defendants' arguments regarding Select's failure to exhaust its administrative remedies in their own Motions for Summary Judgment or, in the Alternative, Judgment on the Administrative Record, the Court will primarily cite to the Langston Defendants' Motion in its analysis of the issue of exhaustion.  (See ECF Nos. 142-1 at PageID 10235 & 146-1 at PageID 10397.)

and three on June 26, 2017, and the attached checks ("the denials"[6]).  (See ECF No. 140-1 ¶

7.)  But Select disputes that these documents constitute proper adverse determinations.  (Id.)

Defendants argue that the denials substantially comply with all applicable notice

requirements.  (See generally ECF No. 147.)

> With regard to [ERISA's] notice requirement, the Sixth Circuit employs a
> "substantial compliance" test, in which a court must examine all of the
> communications between the claimant and the administrator to determine the
> extent to which the purposes of the notice requirement have been fulfilled.  It is
> crucial for the court to determine whether the plan administrators fulfilled the
> essential purpose of [] notifying [the claimant] of their reasons for denying its
> claims and affording it a fair opportunity for review.

Spectrum Health v. Valley Truck Parts, No. 1:07-CV-1091, 2008 WL 2246048, at *5 (W.D.

Mich. May 30, 2008) (internal citations and quotations omitted).

The Court finds that the denials substantially complied with the requirements of the

Plan, 29 U.S.C. § 1133 and C.F.R. § 2560.503-1.  Each denial cited the provisions in the Plan

that provided the basis for denial, including in all but one of the denials the statement that

"Hospital Acquired Conditions as defined by the Centers for Medicare and Medicaid Services

are not covered under the Plan."  (See, e.g., ECF No. 74-1 at PageID 816.)  Select argues that

these citations are vague, but Select was also informed through a certification letter that

AMCS had determined that Plaintiff did not meet the criteria for continued stay at a long-term

care hospital ("LTCH") level of care.  (ECF No. 74-1 at PageID 783; see also ECF No. 82-2

at PageID 5965.)  Additionally, Select understood the reasoning behind the April 2017 denial

in sufficient detail to send a letter to AMCS purporting to appeal the denial.  (See ECF No.

---

[6] Because the Parties dispute the characterization of these documents, the Court will refer to them as "the denials."  The Court notes that although this is a significant dispute and is raised in part in the Parties' Statements of Material Facts and Responses, no Party disputes that these documents were received by Select and the documents are included in the Administrative Record.  (See ECF Nos. 74-1 at PageID 815–16 & 74-2 at PageID 824–25, 828–29 & 839.)  The Parties' dispute as to the characterization of these documents is a legal issue, not a genuine dispute of material fact.

82-1 at PageID 5685–87 ("[Select] is in receipt of your verbal correspondence for the [First Admission] dates of service that have been denied due to medical necessity.").)  The Court finds that the Defendants provided adequate notice as to the specific reason or reasons for the adverse determination.  Defendants also referenced the specific plan provisions on which the determination was based.  (ECF Nos. 74-1 at PageID 816 & 74-2 at PageID 825, 829 & 839.) See C.F.R. §§ 2560.503-1(g)(1)(i)–(ii).

The denials did not contain a description of additional material or information necessary for the claimant to perfect the claim, but Defendants assert that no additional material was needed.  (ECF No. 147 at PageID 10406; see also C.F.R. § 2560.503-1(g)(1)(iii).)  This assertion is supported by the fact that Defendants did request additional material in the December 13, 2016 Remittance Advice document originally sent with respect to Select's claims as to the Patient's First Admission.  (See ECF Nos. 147 at PageID 10406 n. 2 & 74 at PageID 680.)  Defendants further assert that they did not rely on any internal rule, guideline, protocol or similar criterion in making the determination.  (ECF No. 147 at PageID 10406.)

Select also argues that the denials did not comply with applicable notice requirements because they did not include "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action… following an adverse benefit determination on review[.]"  C.F.R. § 2560.503-1(g)(1)(iv).  Although none of the denials expressly set forth the Plan's appeals procedures, two of the June 26, 2017 denials expressly state:

> Information regarding your right to appeal an adverse benefit determination is attached.  The appeal provisions applicable to your claim are more fully set out in the Plan Document for your Employer Group Medical Plan.  For additional

16

> questions regarding the claimant's appeal process, please call [either of two phone numbers] and speak with a customer service representative.

(ECF No. 74-2 at PageID 825, 829.)  Select asserts, and the administrative record supports its assertion, that no information regarding the right to appeal was ever attached to the denials. (ECF No. 140 at PageID 10073.)  But Select does not assert that it did not have access to the Plan, which does contain full details of the applicable appeals procedures (see ECF No. 52-1 at PageID 314–16).  Defendants further assert that Select used the phone numbers included on the denials to call HBS fourteen times concerning payment issues and coverage but that Select did not request a copy of the Plan or mention that the information was not attached as stated. (ECF No. 147 at PageID 10406; see also ECF No. 139.)

The Court finds that, collectively, the denials received by Select substantially complied with the requirements for adverse determinations of benefits and the 180 day-deadline for Select to file its first appeal started to run from, at the latest, June 26, 2017.[7]  The Plan therefore required Select to request a first level appeal pursuant to the terms of the Plan on or before December 23, 2017.

Select asserts that its May 25, 2017 letter to AMCS was an appeal, but the letter did not comply with the requirements of the Plan.  (See ECF No. 82-1 at PageID 5685–87.)  The May 25, 2017 letter was mailed to AMCS instead of HBS, the Plan's third-party administrator.  (See ECF No. 129-1 at PageID 8427.)  The May 25, 2017 letter also was sent prior to the adverse benefit determinations regarding the Patient's Second Admission, so even if it otherwise followed the Plan's requirements, it could not constitute an appeal of the June 26, 2017 denials.  (Id. at PageID 8428.)

---

[7] The April 2017 denial did not contain the same reference to the Plan and appeals procedures as the later June 2017 denials and therefore on its own likely did not cause the 180-deadline to start running.

Select argues that its May 25, 2017 letter was a proper appeal because they were following the instructions of AMCS.  (ECF No. 140 at PageID 10070–71.)  The directions referenced by Select were sent as part of a pre-certification letter that clearly identifies itself as such and states that "[b]enefit eligibility and/or reimbursement is the responsibility of the plan administrator" and "[c]ertification does not guarantee payment."  (ECF No. 117 at PageID 7784.)  This letter did not include instructions on how to appeal the adverse benefit determinations, three of which had not yet been sent at the time Select received this letter from AMCS; rather, the AMCS letter included instructions on how to appeal the non-binding pre-certification decision made by AMCS.  (Id.)

Defendants correctly argue that the first document that could be considered in compliance with the Plan's requirements for first level appeals was Select's January 24, 2018 letter to HBS.  (ECF No. 74 at PageID 583–84.)  But the 2018 letter was sent more than a month after the December 23, 2017 deadline for Select to file its first level appeal and was therefore an untimely appeal under the terms of the Plan.

Because the Court finds that the denials sent to Select on April 17, and June 26, 2017 collectively substantially complied with the adverse benefit determination requirements set forth by the Plan and various ERISA statutes and regulations and that Select did not file a appeal within the 180-day deadline set forth by the Plan, the Court also finds that Select failed to exhaust its administrative remedies.  The failure to exhaust administrative remedies is fatal to Select's claims unless one of exceptions recognized by the Sixth Circuit applies; the Court will now address those exceptions.

Select first argues that because the Defendants failed to comply with its claims procedures that were consistent with ERISA's requirements, 29 C.F.R. § 2560.503-1(l)

requires that the Court deem that Select exhausted its administrative remedies.  (See ECF No. 140 at PageID 10067–74.)  Select relies primarily on <u>Spectrum Health</u>, in which the court deemed the plaintiff's remedies exhausted because the plan administrator never "provide[d] anything in writing during the 180-day period that could constitute a proper written notice of denial[.]"  2008 WL 2246048, at *5–7.

The Sixth Circuit case <u>Wallace</u> also applied the § 2560.503-1(l) exception, deeming the plaintiff's administrative remedies exhausted because of the plan administrator's failure to include information on its claims review procedures or remedies.  954 F.3d at 887–89.  But <u>Wallace</u> is distinguishable from the instant case because the issue in <u>Wallace</u> was whether the failure to include information about review procedures and remedies for denied claims in the plan document itself required the court to deem the plaintiff's remedies exhausted.  <u>Id.</u>  Here, the Plan clearly sets forth the procedures for review of an adverse benefit determination (see ECF No. 52-1 at PageID 314–16) and, although the denials do not expressly reiterate those procedures, they do refer Select to the Plan document for more information.  (See ECF No. 74-2 at PageID 825, 829.)

Because the Court has already found that the denials complied with Defendants' ERISA-compliant claims procedures[8] and because the cases cited by Select regarding the application of § 2560.503-1(l) are distinguishable, the Court does not deem that Select exhausted its administrative remedies pursuant to § 2560.503-1(l).

Select argues in the alternative that the futility exception to the requirement to exhaust administrative remedies applies.  (ECF No. 140 at PageID 10074–75.)  To successfully argue

---

[8] The Court notes that on June 26, 2017, Defendants also sent an Explanation of Benefits directly to the Patient, which did attach a document describing the appeals process.  (See ECF No. 75 at PageID 940–49.)  Select cannot deny that the Patient or the administrator of his estate, at least, received adequate notice of the applicable appeals procedures, and Select has at all times been acting as an assignee of the Patient's benefits, at least with respect to its claims under ERISA.

that the Court should excuse its non-exhaustion, Select must "show that 'it is certain that [its] claim will be denied on appeal, not merely that [it] doubts that an appeal will result in a different decision.'"  Productive MD, LLC v. Aetna Health, Inc., 969 F. Supp. 2d 901, 931 (M.D. Tenn. 2013) (quoting Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 419 (6th Cir. 1998)).  Factors that have led courts to find that administrative appeals would be futile include: "the lawsuit at issue was not frivolous; the claimant had made unsuccessful inquiries to the insurer to change its methodology for two years []; further use of the administrative procedures would have caused the parties additional litigation costs; the factual record was well-established; and [] the court believed it was certain that the insurer would not 'seriously reconsider' the disputed methodology at issue."  Id. at 931–32 (citing Fallick, 162 F.3d at 420–21.)

The Court finds that Select has not met its burden of demonstrating that it is certain that its claims would have been denied on appeal.  Defendants were communicative with Select and gave it opportunities to provide additional documentation supporting its claims.  (See ECF Nos. 74 at PageID 680 & 117 at PageID 7784).  The administrative record provides no support for the assertion that Defendants would not have given the same consideration and opportunity to succeed to any appeal properly submitted by Select.  And although the Parties' correspondences in this case spanned over two years,[9] if Select had properly appealed as required by the Plan, the appeals process would have been completed within a year and it is likely that the litigation costs would have been less than what the Parties have incurred during the course of this litigation.  Had Select properly appealed the denial of its claims, the contemplated procedures in the Plan provided for the evaluation of those appeals fairly and for reconsideration of its decisions as appropriate.  (See ECF No. 52-1 at PageID 310–19.)

---

[9] The first denial was sent on April 17, 2017 and this lawsuit was filed September 26, 2019.

Therefore, the Court does not find that the futility exception excuses Select's failure to exhaust its administrative remedies.

In summary, the April 17, 2017 and June 26, 2017 denials collectively substantially complied with all applicable notice requirements, Select failed to exhaust its administrative remedies pursuant to the Plan, and none of the exceptions to the exhaustion requirement apply to this case. Therefore, the Defendants' Motions for Summary Judgment based on failure to exhaust administrative remedies are **GRANTED**. The Court does not need to consider the Defendants' arguments that Select's claims are time-barred or that AMCS and HBS are not ERISA fiduciaries. The Court also does not reach the merits of Select's wrongful-denial-of-benefits claims.

### B. Plaintiff's ERISA Breach of Fiduciary Duty Claim Against HBS

Select's breach-of-fiduciary duty claim against Defendant HBS remains before this Court. HBS filed its second Motion to Dismiss on July 30, 2020, arguing that this claim is subsumed by Select's wrongful-denial-of-benefits claim. (ECF No. 145.)

#### i. The Court Will Consider the Merits of Defendant's Motion

Select first objects to Defendant HBS's motion based on its untimeliness. (ECF No. 155 at PageID 10522–23.) HBS argues that it did not waive these defenses by failing to include them in its initial Motion to Dismiss, that the claims against it fail as a matter of law, and asks the Court "to examine [the] motion as it if had been pled as a motion for reconsideration or as an incorporation into its Motion for Summary Judgment[.]" (ECF No. 163 at PageID 10636–39.)

The Court will consider HBS's Motion on its merits. Although the Motion is untimely pursuant to the Court's Second Amended Scheduling Order (ECF No. 69), the Court agrees

that HBS's failure to include these arguments in its initial Motion to Dismiss was not a waiver of its right to assert these arguments at later stages of the proceedings.  Because HBS's Motion to Dismiss does not rely on any matters outside the pleadings, the Court will construe HBS's Motion as having been made pursuant to Fed. R. Civ. P. 12(c)[10] and will consider the merits of the motion.

### ii.  Select's Breach of Fiduciary Duty Claim Against HBS is Subsumed by its Wrongful Denial of Benefits Claim

This Court previously discussed the Sixth Circuit cases on the issue of the exclusivity of Select's ERISA claims in its July 24, 2020 Order.  (See ECF No. 141 at PageID 10193–97.) In reviewing Rochow, Gore, and Donati, the Court dismissed Select's breach-of-fiduciary-duty claims against the Langston Defendants and AMCS.  (Id.)  See Rochow v. Life Ins. Co. of N. Am., 780 F.3d 364 (6th Cir. 2015) (en banc); Gore v. El Paso Energy Corp. Long Term Disability Plan, 477 F.3d 833 (6th Cir. 2007); Donati v. Ford Motor Co., General Retirement Plan, Retirement Community, 821 F.3d 667 (6th Cir. 2016).

Select does not successfully argue that its breach-of-fiduciary-duty claim against HBS is materially different from the same claim against the other Defendants.  Select argues that its claim "arises out of the misrepresentation of the extent of available benefits under the Plan" and that its "claim to redress the misrepresentation injury is not duplicative of its claim arising out of the injury associated with the improper denial of benefits."  (ECF No. 155 at PageID 10527–28.)  But Select, relying on Gore, does not address the fact that Gore involved claims against separate defendants.  447 F.3d at 841–42.  Here, Select is bringing both of its ERISA

---

[10] The defense of failure to state a claim upon which relief can be granted can be raised even at trial; Defendant HBS's Motion is not untimely under the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(h)(2).  The Court finds good cause exists to consider HBS's motion.  The matter has been fully briefed and argued and considering the merits of the motion is in the interest of fairness and judicial economy.

claims against HBS.  The Court finds that this case cannot meaningfully be distinguished from

Donati, in which the court stated:

> The only difference between her two claims is the nature of the alleged
> wrongdoing – misrepresenting the cash-out value of her benefits, as opposed to
> wrongfully denying her benefits.  Under Rochow, this distinction alone is
> insufficient to allow a breach-of-fiduciary-duty claim.

821 F.3d at 673–74; see also Blair v. Pension Comm. of Johnson & Johnson, 831 F. Supp. 2d

1021, 1024 (W.D. Ky. 2011) (dismissing breach-of-fiduciary-duty claim because the plaintiff

was suing the entity "responsible for the denial of her benefits").

Therefore, the Court **GRANTS** HBS's Motion to Dismiss as to Select's ERISA

breach-of-fiduciary-duty claim against it.

### C.  Plaintiff's Federal and State Declaratory Judgment Claims Against HBS

Select's Tennessee declaratory judgment claim against HBS is dismissed because

Select did not respond to HBS's arguments on the issue.  (See ECF No. 155 at PageID 10530;

see also Verble v. Morgan Stanley Smith Barney, LLC, 148 F. Supp. 3d 644, 650 (E.D. Tenn.

2015).)  Select's federal declaratory judgment claim against HBS is also dismissed.  First, the

Court credits HBS's argument that (1) 29 U.S.C. § 1132(a) is the exclusive federal remedy for

a claim for ERISA benefits; (2) § 1132(a)(3) is the only ERISA provision that allows for a

declaratory judgment action; and therefore, (3) because the Court has already found that §

1132(a)(1)(B) subsumes any § 1132(a)(3) claim by Select, Select's declaratory judgment is

similarly subsumed by Select's § 1132(a)(1)(B) claim.  (See ECF No. 145-1 at PageID

10381–82.)  Second, Select no longer appears to pursue its declaratory judgment claims, as it

did not address them in its Motion for Judgment on the Administrative Record.  (See ECF No.

143.)  Therefore, the Court **GRANTS** HBS's Motion to Dismiss as to Select's declaratory

judgment claims against it.

IV.     **CONCLUSION**

Because the Court finds that Select failed to exhaust its administrative remedies and that Select's non-exhaustion is not excused in this case, the Court **GRANTS** the Defendants' Motions for Summary Judgment on the issue of failure to exhaust administrative remedies. The Court also **GRANTS** Defendant HBS's Motion to Dismiss for Failure to State a Claim. Accordingly, the Parties' collective Motions for Judgment on the Administrative Record are **DENIED AS MOOT**.

**SO ORDERED**, this 24th day of March, 2021.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE